## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JERRY W. EASTERLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-cv-02353-JEO |
| | ) | |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## BRIEF IN SUPPORT OF FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Ford Motor Company ("Ford") and submits the following Brief in Support of its Motion for Summary Judgment.

## I.    INTRODUCTION AND STANDARD OF REVIEW

This is a product liability suit.  Plaintiff Jerry Easterling was injured in a single-vehicle accident on December 30, 2012, when he lost control of his 2003 Ford F-250 pickup on an icy road early in the morning.  Plaintiff contends that he was wearing his seat belt but that it unlatched during the crash sequence.  He claims that he was seriously injured as a result of the failure of the vehicle's allegedly defective seat belt system.

Plaintiff asserts product liability claims against Ford under the following legal theories: the Alabama's Extended Manufacturer's Liability Doctrine ("AEMLD"), negligence (including failure to warn), wantonness, and for breach of

1

implied warranty.[1]

To overcome Ford's motion for summary judgment, Plaintiff must present substantial evidence to support each element of his claims.[2] Evidence is substantial "if it is of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." *Verchot v. General Motors Corp.*, 812 So.2d 296, 300 (Ala. 2001)(quoting *West v. Founders Life Assurance Co. of Florida*, 547 So.2d 870, 871 (Ala. 1989)).

Ford simply has the burden of "informing the court of the basis of its motion – that is, the moving party must indicate where the nonmoving party's case suffers an evidentiary failure.'" *Tanksley v. ProSoft Automation, Inc*. 982 So. 2d 1046, 1051-52 (Ala. 2007) (quoting *Rector v. Better Houses, Inc*., 820 So. 2d 75, 80 (Ala. 2001)). Evidence that would be inadmissible at trial, including expert testimony, cannot be used to avoid summary judgment. If a plaintiff is unable to present admissible expert testimony to prove an essential element of plaintiff's claim, then summary judgment is proper. *See id.* at 1316-17 (affirming summary judgment where plaintiff failed to present *Daubert*-qualified expert testimony on causation); *Johnson v. Louisville Ladder*, 2008 WL 512261 (S.D. Ala., November

---

[1] *See* Complaint, Doc. 1.

[2] In diversity cases, state law supplies the burden of proof. *Coastal Plains Feeders, Inc. v. Hartford Fire Ins. Co.*, 545 F. 2d 448, 451 n. 5 (5th Cir. 1977) (citing *Palmer v. Hoffman*, 318 U.S. 109 (1943)); *see generally Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

14, 2008) (granting summary judgment in AEMLD case where plaintiff failed to present admissible expert testimony of product defect); *see also Seamon v. Remington Arms Co., LLC*, No. 2:12-CV-895-WKW, 2014 WL 4855018, at *14 (M.D. Ala. Sept. 29, 2014) ("The inadmissibility of Mr. Powell's testimony on causation is, therefore, outcome-determinative of Plaintiff's claims").

Here, Plaintiff has designated Donald R. Phillips, a mechanical engineer, to provide expert testimony of product defect and failure causation pertaining to the driver's seat belt. Phillips' opinions, however, are unreliable, irrelevant, and inadmissible.[3] Without expert testimony to support his claim of defect and causation, Plaintiff's product liability claims, whether alleged as tort or implied warranty claims, fail as a matter of law. Plaintiff's warning claim also fails because Plaintiff cannot provide substantial evidence that Ford breached any duty to warn or that its failure damaged him.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Accident/Background Facts

The accident which forms the basis of this lawsuit occurred on December 30, 2012 on Morgan Road in Bessemer, Alabama.[4] The vehicle in question is a

---

[3] Ford refers the Court to its simultaneously filed Motion to Exclude Opinions of Plaintiff's Expert, Donald R. Phillips, P.E., and related Brief. Ford adopts and incorporates the same as if fully set forth herein.

[4] *See* Alabama Uniform Traffic Accident Report (Exhibit A). All exhibits referenced herein are attached to Defendant's Consolidated Evidentiary Submission in Support of Dispositive Motions.

2003 Ford 4X4 Crew Cab Pickup bearing VIN 1FTNW21F03EA14507.[5]  The subject vehicle was owned by Plaintiff, Jerry Easterling.

On December 30, 2012, Plaintiff was driving to work, traveling north on Morgan Road. The weather was extremely cold, with temperatures below freezing.[6]  Plaintiff was traveling at least 55-60 miles per hour, well over the posted 40 mile per hour speed limit.[7]  As he approached the top of a hill, he hit a patch of ice and lost control of his vehicle.[8] The truck swerved to the right side of the roadway and then traveled across both lanes toward the roadway's west side.[9] The vehicle overturned, coming to rest on the driver's side with the front of the vehicle in the southbound lane and the back of the vehicle off the roadway.[10] As a result of the subject crash, Plaintiff sustained multiple serious, but non-life threatening, injuries.

Plaintiff claims he was properly using the available driver's seat belt system at the time of the subject accident.[11]  It is undisputed that Plaintiff was not wearing his seatbelt at the conclusion of the crash sequence.  It is further undisputed that

---

[5] *Id.*

[6] Deposition of Jerry Waythan Easterling ("Easterling Depo."), pp. 86-87 (Exhibit B)

[7] Deposition of Donald Phillips ("Phillips Depo."), pp. 71, 76 (Exhibit C); *see also* Exhibit A

[8] Easterling Depo., pp. 82, 87

[9] Phillips Depo., p. 73. While Ford disputes certain portions of Phillips' opinions regarding his accident reconstruction in this case, for purposes of this Motion only, Ford does not dispute Phillips' opinions in this regard.

[10] *See* Exhibit A

[11] Easterling Depo., pp. 94, 106. The Alabama Uniform Traffic Accident Report states that Plaintiff was unbelted.  *See* Exhibit A.  For purposes of this Motion, this issue of disputed fact is without consequence.

Plaintiff experienced no prior problems with his truck or its seat belt/restraint system since purchasing the vehicle in 2007.[12]

**B. Plaintiff's Defect Theories and Expert Opinion of Donald R. Phillips**

Plaintiff's Complaint alleges that the driver's seat belt was defective in design and manufacture, causing the seat belt to unlatch during the subject crash. More specifically, Plaintiff's expert, Donald Phillips, attempts to link the Plaintiff's buckle unlatching claim to the fact that the buckle contained two broken button return springs.[13] He asserts that the broken springs caused the driver's seat belt buckle to "inadvertently release during [the] crash because the [broken return springs created a situation where the] release button would not return to the full "up" position."[14]

Phillips concludes that the "failure of the buckle release button to return to a full up position results in the release ramp of the button design to come in close contact with the lock bar of the buckle frame resulting in less than full engagement of the lock bar and therefore allowing for [the] buckle to inadvertently release the latch plate causing the driver to be ejected from a fully belted position."[15] He claims that a force imparted on the outboard side of the buckle during the crash (i.e., the side of the buckle housing positioned toward the center console) could be

---

[12] Easterling Depo., pp. 59, 100, 104
[13] *See* 8.10.16 Report of Donald R. Phillips (Exhibit D)
[14] *Id*. at 3. For a more detailed explanation of the seat belt latch mechanism, *see* Ford's Brief in Support of Motion to Exclude Opinions of Donald R. Phillips.
[15] Phillips 8.10.16 Report, p. 8.

sufficient to overcome the force of the buckle's "leaf" spring, move the lock bar out of the latch plate's slot, and allow the latch plate to release.[16] Phillips admits, however, that he does not know what force is required to overcome the leaf spring.[17] He has performed no force-defection testing to make that determination.[18] He does not know the design specifications for the leaf spring, the spring rate, or the weight of the lock bar.[19] And, while Phillips poses that a sufficient "lateral force" could occur by smacking the buckle housing against the truck's center console and identifies what he says are two points in the crash sequence where this could occur, there is no impact or witness mark on the buckle or console reflecting such that such an impact occurred.[20]

Despite the foregoing, Phillips opines that the subject seat belt buckle was defective "due to the cracked … buckle release button plastic return springs . . . ." and that due to the defective nature of the button return springs, "[Plaintiff's] seat belt became inadvertently released. . . ."[21] Mr. Philips cannot however, specify whether the button return springs are defective in design, manufacture, or both.[22]

In forming his opinions in this case, Phillips' work consisted of his (1) visual inspection of the accident scene, the F-250, and some exemplar seat belt buckles;

---

[16] Phillips Depo., pp. 110, 117-120
[17] *Id*. at 110-11
[18] *Id*. at 204
[19] *Id*. at 111
[20] *Id*. at 117-18, 120-21, 126
[21] 9.28.16 Supplemental Report of Donald Phillips, pp. 2-3 (Exhibit E).
[22] Phillips Depo., pp. 274-76

(2) review of documents and depositions from the case; and (3) review of CT scans and "testing" by another of Plaintiff's experts, Eric Lee Van Iderstine.[23]   Phillips performed no independent testing in support of his opinions; instead, he embraces the work by Van Iderstine.[24]

Post-accident inspections show that the subject buckle's release button, which has a full travel distance of several millimeters, may not consistently return to the full "home" or "up" position.  CT scans of the buckle confirm that the two polymer release button return springs inside of the buckle were fractured and that, with the latch plate inserted into the buckle and fastened, the release button is positioned 1.72 millimeters below the buckle cover.[25]

Van Iderstine conducted testing in an attempt to demonstrate that the subject seat belt, when fastened in normal use, will inadvertently unlatch because of the fractured button return springs and the release button's failure to return to the full up position.  To test this theory, Van Iderstine created a fixture designed to hold the buckle in place with an adjustable nylon screw that depresses and holds the release button during the test cycle.[26]   When he tested the subject buckle, he depressed the release button 2.9 millimeters (mm) below the button cover with the

---

[23] Phillips 8.10.16 & 9.28.16 Reports, pp. 1-2
[24] Phillips Depo., pp. 139-41
[25] Deposition of Eric Van Iderstine ("Van Iderstine Depo."), pp. 87-88, 99, 106 (Exhibit F)
[26] 8.9.16 Report of Eric Van Iderstine, p. 4 (Exhibit G); Van Iderstine Depo., pp. 9-10

nylon screw.[27]  In other words, he pushed the release button down an *additional* 1.2 mm beyond the 1.72 mm position documented by the CT scan of the latched subject buckle and latch plate.[28]  With the button depressed 2.9 mm, Van Iderstine held the latch plate, rocked it, and was able to pull it out of the buckle.[29]

In his deposition, Van Iderstine acknowledged that the 1.72 mm measurement may be representative of the condition of the buckle, assuming that plaintiff fastened it on the date of the crash.[30]  He further conceded:

> Q.     And – and I think we've already talked about the facts that had Mr. Easterling been wearing his seat belt on the day of this crash, it would more likely have been in a position that more closely approximates what we see in Exhibit 6 (1.72 mm) than the condition it was in with – when you turned the nylon screw down into the button.
>
> A.     **Yeah.**  We – we have – we have no pictures, obviously, from the – the – the moment before the incident, so the – it – Again, I think we talked about this.
>
> This may be representative, but you know, **to a reasonable degree of engineering certainty, I cannot say that this position would have exactly matched the position on the day of the accident**.[31]

Van Iderstine never attempted to remove the latch plate from the subject buckle with the button depressed 1.72 mm.  Instead, his testing consists only of cycles with the button depressed to a position well beyond the position

---

[27] 9.27.16 Supplemental Report of Eric Van Iderstine, p. 2 (Exhibit H); Van Iderstine Depo., pp. 10-13, 119-21
[28] *Id*.
[29] *Id*.
[30] Van Iderstine Depo., pp. 89-90
[31] *Id*. at 102-03 (emphasis added)

documented in his CT scan.[32]

Phillips points to buckles utilizing steel coil or cantilevered button return springs as a superior alternative design.[33] He did no testing or analysis, however, to compare his alternative design to the subject button return springs. He points to no literature, specifications or documents in support of his alternative. And, interestingly, Phillips cannot identify a seat belt buckle in production that he believes would resolve his "defect" and be reasonably safe in general.[34]

Phillips also admits that he has never designed a seat belt for production, is not an expert in the area of plastics or polymers, is not a chemist, does not know the materials properties of the subject button release springs and does not even know if they met Ford's specifications.[35] Phillips has not criticized the design or manufacture of polymer button return springs in prior cases.[36]

In support of Plaintiff's failure to warn claim, Phillips also criticizes Ford, claiming that Ford "knew or should have known" of issues with polymer button return springs.[37] Phillips claims that Ford should have recalled buckles incorporating such springs or issued a related technical service bulletin post-sale.[38]

_____

[32] *Id*. at 88-89, 130-31
[33] Phillips 8.10.16 Report, pp. 6-7
[34] Phillips Depo., pp. 202-03
[35] *Id*. at 258, 274-76, 279-80.
[36] *Id*. at 225, 268-69.
[37] *Id*. at 253-55
[38] *Id*.

## III. ARGUMENT

### A. Plaintiff's Tort Claims Fail as a Matter of Law.

Plaintiff cannot prove by substantial evidence that the subject vehicle was defective. Even assuming arguendo that Plaintiff was able to provide substantial evidence of defect, he is unable to establish the crucial causal link between the alleged defect and Plaintiff's injuries. This absence of proof eliminates Plaintiff's claims under the AEMLD, as well as his other tort claims based upon the truck's design and manufacture.

#### 1. Plaintiff cannot provide substantial evidence that a defect existed in the subject vehicle.

To prove his tort claims based upon Ford's design or manufacture of the subject vehicle, Plaintiff must present substantial evidence that his 2003 F-250, specifically the buckle's button return springs, were defective. In complex automotive product liability cases such as the instant case, expert testimony is required to prove an alleged defect. *Brooks v. Colonial Chevrolet-Buick, Inc.*, 579 So. 2d 1328, 1333 (Ala. 1991) (holding an airbag system is "precisely the type of technical commodity that [requires] expert testimony to prove an alleged defect."); *Jordan v. General Motors Corp.*, 581 So. 2d 835 (Ala. 1991) (affirming summary judgment in favor of an automobile manufacturer where the plaintiff failed to present sufficient expert testimony regarding an alleged defect in the lap and

shoulder harness of the vehicle at issue).[39]   Because Plaintiff fails to meet the

burden of showing that the subject product is defective through admissible expert

testimony, summary judgment is due to be granted in favor of Ford.  See *Jordan*,

581 So. 2d 835; *see also Townsend v. General Motors Corp.*, 642 So. 2d 411 (Ala.

1994).

Mr. Phillips is the only expert proclaiming that the seat belt, and in particular

its button return springs, are defective. Yet, Mr. Phillips' unsubstantiated defect

opinions are inadmissible.  His opinions fall short of the requirements of Rule 702

of the Federal Rules of Evidence on all fronts:   qualification, reliability and

relevance.   Ford refers the Court to its simultaneously filed Motion to Exclude

Opinions of Donald R. Phillips, P.E., and supporting Brief as further explanation

and support of its Motion for Summary Judgment.

Mr. Phillips summarily declares the buckle's button return springs to be

"defective" because they fractured at some unknown point in time and, according

to Phillips, prevented the buckle's release button from returning to a "full up"

position, therefore allowing the latch to release during the subject crash.[40]  Yet, Mr.

Phillips lacks the expertise to proffer his opinions regarding the material properties

of the springs or their mode of failure.   He does not even know the springs'

---

[39] In addition to proving the existence of a defect, Plaintiff must also prove existence of a safer, practical alternative design to pursue his design defect claims.  He also must prove causation in fact.  Plaintiff's failure to prove these additional elements of his claims is more fully briefed, *infra*.

[40] Phillips 8.10.16 Report, p. 8

material properties or whether they met Ford's specifications.[41]    He has done nothing to determine why they failed, when they failed, or their expected life span or resistance to aging or wear.  Indeed, he does not even know whether the springs are defective in design, manufacture or both.[42]

Ultimately, Phillips offers that because the (1) button return springs were found to have fractured and (2) Plaintiff was injured during the subject crash (and found without the seat belt engaged), there must be a defect.  An unsubstantiated allegation that a product "failed" without expert testimony identifying the specific defect, however, is nothing more than guesswork; it is not substantial evidence that will enable an AEMLD claim to survive a summary judgment motion.  *Bloodworth v. Smith & Nephew, Inc.*, 476 F. Supp. 2d 1348, 1353-54 (conclusory allegations of defect insufficient to survive summary judgment).

In *Jordan v. General Motors Corp.*, the Alabama Supreme Court affirmed summary judgment in favor of General Motors in a seat belt case where the plaintiff's expert, like Phillips, proclaimed a seatbelt defective because it allegedly failed.   In *Jordan*, the plaintiff asserted that General Motors defectively manufactured the seat belt/shoulder harness system in her vehicle, offering the testimony of her expert who stated that "although he could not identify any specific defects in the subject seat belt system, he was nevertheless of the opinion that the

[41] Phillips Depo., p. 280
[42] *Id*. at 274-76

seat belt system was defective because [the plaintiff], while wearing her seat belt, incurred injuries that he felt she would not have received if the seat belt system had functioned properly." *Id.* Affirming summary judgment in favor of General Motors, the Alabama Supreme Court reasoned that "because [the plaintiff] presented no evidence other than evidence that she received injuries as a result of an automobile accident while wearing a GM seat belt," plaintiff had not met her burden of presenting "substantial evidence to support a claim under the AEMLD." *Id.*; see also *Gardner v. Aloha Ins. Services*, 566 Fed. Appx. 903 (11th Cir. 2014) (affirming summary judgment where plaintiff failed to prove product defect through admissible expert testimony).

Just like the plaintiff's expert in *Jordan*, Mr. Phillips' opinion is entirely unsupported. His "defect" opinion is based on nothing more than broken springs and an alleged product failure. He cannot identify the specific "defect" and has done nothing beyond looking at the fractured springs on a CT scan. Plaintiff has not met his burden of presenting "substantial evidence to support a claim under the AEMLD" through admissible expert testimony, and his claims must be dismissed. See *id.* at 837; *Bloodworth*, 476 F. Supp. 2d at 1355 ("[T]he court finds that Smith & Nephew has carried its initial burden on summary judgment by pointing to the absence of admissible expert testimony to support an essential element of Plaintiff's case . . . There simply is no evidence creating a genuine issue of

material fact as to whether Smith and Nephew's constrained liner was defective or whether the injury to Mrs. Bloodworth was caused by a defect in the product"); see generally *Evers v. General Motors*, 770 F. 2d 984, 986 (11th Cir. 1985) (a party may not avoid summary judgment solely on the basis of an expert's conclusory assertions).

## 2. Plaintiff cannot prove the existence of a safer alternative design, as required by Alabama law.

Plaintiff's AEMLD claim, predicated on a design defect, also requires Plaintiff to show the existence of an alternative design that is both practical and safer. In *General Motors Corp. v. Edwards*, the Alabama Supreme Court set forth the requirements for such a claim:

> [In] order to prove defectiveness, the plaintiff must prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the automobile. The existence of a safer, practical, alternative design must be proved by showing that:
>
> (a) *The plaintiff's injuries would have been eliminated or in some way reduced by the use of the alternative design*; and that,
>
> (b) Taking into consideration such factors as intended use of the vehicle, its style, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect, the utility of the alternative design outweighs the utility of the design actually

used.

482 So. 2d at 1191 (emphasis added).

In the instant case, Mr. Phillips claims that steel coil or cantilevered return springs are a more "robust" design. Yet, he does not know the material properties of the subject springs so as to make a substantive comparison.[43] He failed to perform or review testing of the subject springs or his alternative design steel springs to determine their expected life spans and/or resistance to aging or wear. He can point to no literature to support his opinion. Simply put, he has done nothing to support his assertions.

Phillips' wholesale lack of data or testing[44] to support his conclusory alternative design opinion dictates its exclusion in this case. Plaintiff has presented no other evidence of an alternative design, much less a "practical" and "safer" design. Accordingly, the lack of any proposed alternative design -- especially where the Alabama law requires such evidence in order to establish allegations of design defect – mandates that Summary Judgment be granted in favor of Ford.

### 3. Plaintiff's manufacturing defect claim fails.

---

[43] Phillips Depo., p. 280

[44] The only "testing" offered by plaintiff relates to whether a seat belt can unlatch with the release button in a partially depressed position, which is essentially a "causation" piece of Phillips' analysis and discussed in Section III(A)(4), *infra*. Plaintiff's experts performed no testing, nor do they present any test data, relating to the life span or failure of button springs, which is the component Phillips deems defective.

Plaintiff's Complaint alleges that the subject seat belt was defective in its manufacture.[45] Because Plaintiff is asserting a manufacturing defect claim, Plaintiff must affirmatively show that the seat belt, and in particular the seat belt button return springs, had a manufacturing defect when sold. See *Jordan v. General Motors Corp.*, 581 So. 2d 835, 836 (Ala. 1991) (citing *Sears Roebuck & Co. v. Haven Hills Farms, Inc.*, 395 So. 2d 991 (Ala. 1981)).

As discussed previously, Plaintiff's entire defect claim fails, as Phillips' opinion testimony is inadmissible. Yet, even if the Court were to deny Ford's Motion to Exclude, Plaintiff's tort claims based upon a manufacturing defect fail regardless.

Here, Mr. Phillips offers:

> Q. . . . Just so it's clear for the jury, do you have an opinion on whether the problems you've identified with this buckle that was in Mr. Easterling's vehicle, is it your opinion that they are a manufacturing defect, a design defect, or both or what? What's your position on that?
>
> A. Well, at this time, it could be a combination of both the manufacturing and the design defect, and the reason for that is **if** the material spec for the plastic return springs was such that, given the design, they should never crack through normal use, then, obviously, it's a manufacturing issue, because then now the material is not to specification where they are cracking with the original

---

[45] *See generally* Complaint,

design showing that if it was designed properly with the
proper material, it should never crack.[46]

While Phillips surmises that the springs might not meet Ford's material specification, **he does not know what that specification is.**[47] He does not know the material properties of the springs.[48] He knows nothing, other than that the springs broke at some unidentified point in time. It is well-settled Alabama law that the plaintiff "'must affirmatively show a defect in the product'"; the failure of a product does not presuppose or equate the existence of a defect. *Verchot v. General Motors Corp.*, 812 So. 2d 296, 301 (Ala. 2001) (quoting *Brooks v. Colonial Chevrolet-Buick, Inc.*, 579 So. 2d 1328, 1331 (Ala. 1991)); see also *Townsend v. General Motors Corp.,* 642 So. 2d 411 (Ala. 1994). Phillips' speculation that springs (i) of which he does not know the material properties, (ii) might not meet some unknown material specification, is nothing more than garbled conjecture. Plaintiff's manufacturing defect claim fails.

### 4. Plaintiff cannot prove causation in fact.

Another critical element of Plaintiff's claims is causation in fact. For his claims to succeed, Plaintiff "must prove causation in fact, including proof that the defect caused the injury and that the defect is traceable to the Defendant." *Gibson v. Norfolk Southern Corp., et al*, 878 F. Supp. 1455 (N.D. Ala. 1994); *Morguson v.*

---

[46] Phillips Depo., pp. 273-74 (emphasis added)
[47] *Id*. at 280
[48] *Id*. at 274-76, 280

*3M Company*, 857 So. 2d 796, 800 (Ala. 2003) ("[t]he plaintiff has the burden of presenting substantial evidence of proximate cause"). Although a manufacturer has a duty to design or manufacture a product which is reasonably safe for its intended use and purposes, Alabama law does not make a manufacturer an insurer against all harm that may be caused by the use of the product; i.e., a manufacturer is not obligated to produce an accident proof or injury proof product. *Brooks*, 579 So. 2d at 1331 (citing *Casrell v. Altec Industries, Inc.*, 335 So. 2d 128, (Ala. 1976)); see also *Atkins v. American Motors Corp.*, 335 So. 2d 134 (Ala. 1976); *Martinez v. Dixie Carriers*, 529 F. 2d 457 (5th Cir. 1976).

Here, Plaintiff has not presented substantial evidence linking his alleged defect in the button return springs to his injuries. Phillips' opinion that broken button springs caused the seat belt to unlatch in Plaintiff's crash because the release button was depressed at a level that allowed inadvertent unlatching is nothing more than unsupported speculation. As discussed in Ford's Motion to Exclude and supporting Brief, Phillips' opinion rises and falls upon unlatching demonstrations conducted by Eric Van Iderstine under false conditions that do not fit the facts of this case. Moreover, Phillips has done nothing to determine what forces would be required to cause the latch plate to disengage from the buckle in the subject crash.[49] His opinion is unreliable, irrelevant, and inadmissible.

---

[49] *See* Phillips' Depo., pp. 110-11, 204

Because Plaintiff has not produced substantial evidence that a "defect" in the button springs caused the seat belt to unlatch during his crash sequence, Plaintiff's claim fails as a matter of law. See *Morguson*, 857 So. 2d at 800-02 (affirming summary judgment for manufacturer because break in causal chain defeats AEMLD claim as a matter of law); *Taylor v. General Motors Corp.*, 707 So. 2d 198, 203 (Ala. 1997) (evidence of plaintiff's car veering from road "not sufficient evidence, under the AEMLD, to establish a defect in the vehicle . . . there are myriad reasons why vehicles veer from the road, including driver error and highway conditions"); *Gibson*, 878 F. Supp. at 1460 (summary judgment appropriate where expert "offered nothing more than speculation and conjecture" regarding warning lights on the product).

**B. Plaintiff's Breach of Implied Warranty Claim Fails as a Matter of Law.**

To recover for breach of implied warranty under Alabama law, Plaintiff "must prove the existence of an implied warranty, breach of that warranty, and damages proximately resulting from that breach." *Bagley v. Mazda Motor Corp.*, 864 So.2d 301, 315 (Ala. 2003) (quoting *Barrington Corp. v. Patrick Lumber Co.*, 447 So.2d 785, 787 (Ala. Civ. App. 1984)); *see also* Ala. Code §§ 7-2-315, 316 (1975). Though styled as a warranty claim, Plaintiff still must prove that a defect in the seat belt proximately caused his injuries. *Sears, Roebuck & Co*, 395 So. 2d at 996 (quoting *Shramek v. General Motors Corp.*, 216 N.E.2d 244, 247 (Ill. App.

Ct.1966)) ("Whether the charge is breach of implied warranty, negligence or the strict tort liability...the cornerstone of plaintiff's cause of action is the existence of a defect in the [product] at the time it left the control of the manufacturer or seller. Without this proof his case must fall.").

Because Plaintiff has not demonstrated by substantial evidence that the seat belt contained a defect that proximately caused his injuries, Ford is entitled to judgment as a matter of law on Plaintiff's implied warranty claim.

### C. Plaintiff's Failure to Warn Claim Fails as a Matter of Law.

Here, Plaintiff's "failure to warn" claim does not relate to the absence of any warning accompanying the vehicle, nor does it relate to the adequacy of any warning given by Ford. Instead, Plaintiff, through his expert Phillips, claims that Ford "knew or should have known" of issues with polymer button return springs and thus should have recalled buckles incorporating such springs or issued a related technical service bulletin.[50]

To prevail on a failure to warn claim under Alabama law, Plaintiff must prove (1) that Ford had a duty to warn; (2) that Ford failed to provide adequate warnings of the hazards of a particular product, thereby breaching that duty; (3) that the breach was the proximate cause of Plaintiff's harm; and (4) that Plaintiff suffered injury as a result. Bodie v. Purdue Pharma Co., 236 Fed. Appx 511, 518

---

[50] Phillips Depo., pp. 253-55

(11th Cir. 2007) (citing <u>E.R. Squibb & Sons, Inc. v. Cox</u>, 477 So.2d 963, 969 n.3 (Ala. 1985)).

Here, Plaintiff's failure to warn claim fails as a matter of law on a number of fronts. First, he has presented no evidence that Ford had any duty to warn. While Plaintiff attempts to couch his claim as a "failure to warn" claim, he asserts that Ford had a post-sale duty to recall or retrofit vehicles with seat belt buckles incorporating polymer springs. Yet, Alabama has not recognized a post-sale duty to warn, recall or modify a product. *See Lampley v. Bridgestone, Inc.,* 1992 WL 12666661 (M.D. Ala., March 31, 1992).

Second, Plaintiff cannot provide substantial evidence that Ford failed to provide adequate warnings. Indeed, Mr. Phillips does not have any criticism of the warnings provided by Ford with the vehicle.[51]

Third, Plaintiff cannot present substantial evidence that Ford's failure to provide some additional warning -- or for that matter, recall the vehicle or issue a technical service bulletin -- was the proximate cause of Plaintiff's harm. "[T]he element of proximate cause is essential to the plaintiff's prima facie case of negligent failure to adequately warn." *Kelly v. M. Trigg Enterprises, Inc.*, 605 So. 2d 1185, 1192 (Ala. 1992). For the reasons previously discussed, Plaintiff does not provide substantial evidence that the button springs were defective, that they

---

[51] *Id.*

fractured due to a defect, or that the broken springs caused the seat belt to unlatch during Plaintiff's crash sequence. Without this foundation, Plaintiff' warning claim collapses.

### D. Plaintiff's Wantonness Claim Fails.

Count Three of Plaintiff's Complaint asserts that Ford was "wanton in the design, manufacture, testing, warnings, inspection, distribution and/or sale" of Plaintiff's truck. For the reasons previously discussed, Plaintiff's wantonness claim fails for the same reasons as his underlying AEMLD and negligence claims. Nevertheless, even if the Court were to allow either of those counts to survive summary judgment, Plaintiff's wantonness claim fails because he has not presented substantial evidence that Ford, "with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty with knowledge of the existing conditions, and that this act or omission" produced Plaintiff's injury. *Joseph v. Staggs*, 519 So. 2d 952, 954 (Ala. 1988); Ala. Code § 12-21-12(a) (1975). Wantonness requires knowledge that an act or failure to act does not merely increase the risk of injury, but that the act makes the injury "likely" or "probable." *Coca-Cola Bottling Co. v. Stripling*, 622 So. 2d 882, 884-85 (Ala. 1993). Thus, wantonness demands proof of "some degree of conscious culpability." *George v. Champion Ins. Co.*, 591 So. 2d 235 (Ala. 1991). Plaintiff clearly has not met this standard.

## IV.    CONCLUSION

Plaintiff has failed to provide substantial evidence to support the essential elements of his claims.  Consequently, Ford respectfully asks the Court to GRANT its motion for summary judgment on Plaintiff's Complaint and all Counts alleged therein.

Respectfully submitted,

*/s/ Paul F. Malek*
D. Alan Thomas (ABS-8351-T77D)
Paul F. Malek (ASB-0656-A48P)
Samantha K. Nicolle (ASB-6121-X51M)
Attorneys for Defendant,
FORD MOTOR COMPANY

**OF COUNSEL**:
HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223-2484
Telephone:  (205) 251-1193
Telecopier:  (205) 251-1256
athomas@huielaw.com
pmalek@huielaw.com
snicolle@huielaw.com

## FONT CERTIFICATE

Pursuant to Local Rule 7.1D, I hereby certify that this pleading was prepared using a font and point selection approved by the Court in Local Rule 5.1C.

*/s/ Paul F. Malek*
Paul F. Malek
Attorney for Defendant,
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2017, a true and correct copy of the foregoing has been served on all counsel of record via electronic mail.

Craig P. Niedenthal
Shunnarah Injury Lawyers
2900 1ˢᵗ Avenue South
Birmingham, AL 35233
cniedenthal@asilpc.com

*/s/ Paul F. Malek*
OF COUNSEL