FILED
2020 Jan-17  PM 06:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **JERRY W. EASTERLING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:14-cv-02353-JEO** |
| | ) | |
| **FORD MOTOR COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>PLAINTIFF JERRY W. EASTERLING'S MOTION IN LIMINE</u>

COMES NOW Jerry W. Easterling, Plaintiff in the above-styled civil action, by and through his undersigned counsel of record, pursuant to the Court's Pretrial Order and *Federal Rules of Evidence* 103 and 104, and requests that the Court exclude certain anticipated evidence and arguments. The Plaintiff moves *in limine* for an order instructing the Defendant, the Defendant's attorneys and every witness called by the Defendant at trial to refrain from mentioning through questions, voir dire, opening statement, arguments or otherwise, either directly or indirectly, any of the matters set forth herein without first approaching the bench and obtaining a ruling from the Court outside the presence and hearing of all prospective jurors and jurors ultimately selected to try this case. The Plaintiff's Motions in Limine, and the support therefore, are as follows:

## 1.   EVIDENCE OR STATEMENTS BY COUNSEL CONCERNING FORD MOTOR COMPANY'S SAFETY RECORD AND/OR GOOD CHARACTER.

The Plaintiff anticipates that Ford may attempt to offer evidence or comments that Ford Motor Company (or non-party TRW) is one of the world's leading companies when it comes to vehicle safety research, that Ford (or non-party TRW) "pioneered" numerous safety improvements since the 1940's, or that Ford (or non-party TRW) spend millions of dollars per year on safety research and/or testing.

The only purpose of such evidence or arguments would be to suggest that because Ford (or non-party TRW) have conducted extensive vehicle safety research and testing, the subject RNS4G buckle must be safe, not unreasonably dangerous and not defective.

This argument would be no more appropriate than if the Plaintiff gratuitously mentioned the recall of every door latch, seatbelt, hood release, brake shoe or other Ford or TRW component in an attempt to prove that the subject vehicle or any component thereof must also be defective in this case.

Ford's internal decision-making with respect to the vehicle's RNS4G buckle are central issues in this case.  Evidence that Ford (or non-party TRW) are "leaders" in automotive crash safety or may have been the first to market certain safety improvements is not relevant, because such evidence of past acts has no tendency to make more or less probable any fact of consequence to the determination of this action.

2

For example, the fact that Ford may have been the first to offer vehicular lap safety belts as optional equipment in the mid-1950's has no relevance to whether the subject RNS4G buckle was fit for its intended purpose on the date of this crash.

Ford's (and non-party TRW's) prior general "good acts" are irrelevant to the design, development and testing of the subject buckle at issue here. Moreover, this evidence presents a danger of unfairly prejudicing the Plaintiff, confusing the issues and misleading the jury, which would result in undue delay and be a waste of time. Irrelevant and prejudicial evidence regarding Ford's (or non-party TRW's) prior acts, as described above, should be excluded by court order. See, e.g. *Miller ex rel. Miller v. Ford Motor Co.*, 2:01CV545FTM-29DNF, 2004 WL 4054843, at *4 (M.D. Fla. July 22, 2004) (granting motion in limine precluding Ford and Ford's counsel from commenting or offering evidence that Ford is one of the leading car companies in the world with regard to vehicle safety research, that Ford pioneered a number of vehicle safety improvements since the 1940's, of the amount of money Ford spends each year on safety-related matters, and similar matters unrelated to the vehicle at issue in the litigation, because "the only issues in this case are its liability for this one accident, and if liable, the extent of the damages."), *see also* Orders Excluding Evidence of "Overall Safety," in *Bishop v. General Motors Corp.*, 925 F. Supp. 294, 298 (D. N.J. 1996); *Stokes v. Ford Motor Company*, 368 Mont. 365 (Mont. 2013) (excluding testimony regarding Ford's "well-documented record of safety" and

Ford's testimony that Ford "had a vehicle that exceeded all of the safety standards");
*Flax v. Daimler Chrysler*, 272 S.W. 3d 521 (Tenn. 2008).

Ford may further attempt to offer evidence that either it (or non-party TRW) is a "good" company.  Such evidence is clearly irrelevant and inadmissible under *Fed. R. Evid.* 404(a).  If a hypothetical Defendant John Doe attempted to bring character evidence to trial to say that he was a "good fellow," the Court would readily exclude such evidence, as it has no bearing on whether hypothetical Defendant John Doe caused a crash.  This situation is no different with respect to Ford (or non-party TRW) simply because corporate entities are involved.

To succeed in the present breach-of-warranty lawsuit, the Plaintiff must prove that Ford's product was not fit for its ordinary purpose of passenger restraint.  Ford's (and non-party TRW's) good corporate character has nothing to do with that issue, and evidence or statements by counsel that go to Ford (or non-party TRW's) alleged good corporate character should be excluded by court order.  See, e.g. *Miller ex rel. Miller v. Ford Motor Co.*, 2:01CV545FTM-29DNF, 2004 WL 4054843, at *4 (M.D. Fla. July 22, 2004) ("[w]hether Ford is a good or bad company, the only issues in this cae are its liability for this one accident, and if liable, the extent of the damages.").

In the past, Ford trial counsel has been known to comment in opening statements that Ford trusts its counsel to talk with jurors about their products.  Such comments are designed to artificially enhance the lawyers' – and Ford's – credibility

with the jury, and are not appropriate or relevant anywhere in the case.  Such commentary should be expressly excluded by court order.

Finally, Ford counsel has also been known to tell a jury that they represent the hundreds of thousands of individual employees of the company.  This is not accurate. Ford's counsel does not personally represent Ford's 400,000 employees.  No Ford employees are being sued in this case.  Any attempt by Ford or its counsel to suggest otherwise is an attempt to mislead and also artificially enhance the lawyers' – and Ford's – credibility.  As such, the Plaintiff requests a court order precluding Ford and its counsel from introducing evidence of or commenting that they are the "face of Ford Motor Company," implying that they represent Ford's 400,000 individual employee or any such similar misleading and irrelevant statements.

**2.     EVIDENCE OR STATEMENTS BY COUNSEL THAT FORD EMPLOYEES, COUNSEL, FAMILY, FRIENDS OR OTHERS APPROVE OF AND DRIVE FORD VEHICLES, THAT FORD IS A "FAMILY COMPANY" OR ANY SUGGESTION THAT A JUDGMENT WILL HARM FORD EMPLOYEES OR RAISE THE PRICE OF FORD VEHICLES.**

Ford trial counsel have been known to make irrelevant and improper arguments regarding the company's standing in the community, improperly characterizing Ford workers and their families as good people, or suggesting that a verdict against Ford would raise the price of Ford vehicles or cause Ford employees to lose their jobs and harm their families.  Such evidence and/or argument is irrelevant to any claim or defense in this case.

For example, Ford's counsel have, in the past, improperly "marketed" their client to the jury by saying things about how Henry Ford allegedly got his friends together to pool their money to create Ford Motor Company, or similar statements. Ford's counsel have also been known to travel further down this irrelevant and prejudicial path, representing that Ford is still a "family company."  The reality, of course, is that Ford is a publicly-traded corporation with a present market capitalization of over $36,000,000,000.

Who controls or manages Ford Motor Company and the Ford family's personal activities in the community of Detroit are not relevant to any issue in this case.  Even if Ford could prove the relevance of these varieties of statements, such commentary would be completely inappropriate in opening statements, as Ford will present no evidence in this trial to back up their assertions.  These kinds of arguments from Ford should be excluded by court order.

Ford's counsel has similarly attempted in the past to engender sympathy for Ford by representing Ford employees as a collection of individual people who work hard, every day, for Ford.  These kinds of comments are undisguised efforts to appeal improperly to jurors' sympathies and are entirely inappropriate.  These kind of statements from Ford or its counsel should be excluded by Court order.

**3.    EVIDENCE  OR  STATEMENTS  BY  COUNSEL  THAT COUNSEL OR ANY WITNESS DRIVES A FORD VEHICLE.**

The Plaintiff requests that the Court preclude any argument or the introduction of any evidence concerning the fact that the Plaintiff, any counsel, experts, witnesses, Ford employee or any other individuals (such as staff, family members or friends) allegedly drive or have driven a Ford vehicle.  Ford may attempt to bolster their defense of this case by offering irrelevant personal opinions vouching for the subject vehicle's safety and performance based upon other persons' driving experience with vehicles of the same or similar make.

For the same irrelevant purpose, Ford may also attempt to introduce evidence or argue that witnesses or other individuals drive or allow their family members to drive or ride in Ford vehicles.  Simply put, the vehicles that any party, attorney or witness owns in this case or drives is irrelevant, and any such argument is also irrelevant, highly prejudicial and should be excluded by court order.  *Fed. R. Evid.* 401, 403.  Such testimony would constitute an improper attempt to "vouch" for Ford or to provide a personal reference in support of the safety of Ford vehicles or a particular Ford vehicle.

A witness might have many reasons for driving a vehicle other than the idea that he or she thinks the vehicle to be generally safe.  A defense expert might drive a Ford vehicle to attract more expert business from Ford.  Ford employees might drive Ford vehicles due to company discounts that make it financially advantageous for them to drive Ford vehicles.  Therefore, although there is a prejudicial implication suggesting that if a witness (or a witness' family member or friend)

drives a Ford vehicle, the vehicle is safe, there is no true connection between the implication and any real question of whether the vehicle or its component parts are safe or dangerous. This potential evidence should be excluded by court order. *Fed. R. Evid.* 401, 403.

Similarly, defense counsel should not be permitted to argue that they drive a Ford vehicle because (a) lawyers are not allowed to assert personal knowledge about the evidence and (b) lawyers are not allowed to make prejudicial comments on the evidence. See *U.S. v. Moore*, 710 F.2d 157, 159 (4th Cir. 1983); see also *U.S. v. Garza*, 608 F.2d 659, 663 (5th Cir. 1979).

The purpose of an attorney stating that he or she drives a Ford or any vehicle with similar features to the subject vehicle would be to assert, by implication, the attorney's personal knowledge of the truth of the argument he or she is making on Ford's behalf, i.e., that Ford vehicles are safe and not defective. Ford is not permitted to take this approach. The fact that counsel does or does not drive a Ford (or a vehicle with similar features to the subject vehicle) is not evidence that relates to anything having to do with what happened in this case. The court should exclude this evidence by order. *Fed. R. Evid.* 401 and 403.

## 4. EVIDENCE OR STATEMENTS BY COUNSEL THAT COUNSEL OR ANY WITNESS OWNS OR DRIVES A VEHICLE CONTAINING A TRW RNS4G BUCKLE.

For essentially identical purposes, Ford may also attempt to introduce evidence or argue that witnesses or other individuals drive or allow their family

members to drive or ride in Ford vehicles or other vehicles installed with RNS4G buckles.  Not only are the vehicles that any party, attorney or witness owns in this case or drives irrelevant, whether any party, attorney or witness (or their family or friends) have RNS4G buckles in their vehicles is also irrelevant, highly prejudicial and should be excluded by court order.  *Fed. R. Evid.* 401, 403.

Such testimony would constitute an improper attempt to "vouch" for Ford's buckle or to provide a personal reference in support of the safety of the RNS4G buckle.  The relative safety or hazards associated with the RNS4G buckle will be established (or not) by competent evidence as to whether the subject buckle in the Plaintiff's vehicle was fit for its ordinary purpose on the day of this crash.   Whether other people drive vehicles containing RNS4G buckles that may or may not be afflicted with the same inherent issues as the subject buckle is completely irrelevant to the facts of this case and would be highly prejudicial.  *Fed. R. Evid.* 401, 403.

**5.    EVIDENCE OR STATEMENTS BY COUNSEL CONCERNING THE OVERALL SAFETY RECORD OF THE SUBJECT VEHICLE.**

Ford may attempt to argue that "overall," broken and dangerous RNS4G buckle aside, the Plaintiff's subject vehicle is a "safe" vehicle.  The issue in this case is not the safety of the vehicle overall, but whether the subject vehicle's RNS4G buckle was fit for its intended purpose of passenger restraint.  See *Easterling v. Ford Motor Company*, 3780 Fed. Appx. 834, 835 (11th Cir. 2019) ("[s]o naturally, breach

[of the implied warranty of merchantability] occurs when goods are *not* fit for the ordinary purposes for which they are used.  It's that simple.").

The purpose of an "overall safety" argument is to present a generalized positive image of Ford and its vehicle as having some vague "good" character.  Such an "overall safety" argument, however, is nothing more than an impermissible bolstering of Ford's character.  *Fed. R. Evid.* 404(a) (character evidence not admissible to show conformity therewith).  The following are known examples of Ford's use of such improper argument:

> They can be involved in **all types of crashes**, frontal crashes, side impacts, rear end impacts.  But the **Ford Explorer is a very safe vehicle**. (Alan Thomas, Opening Statement, *Hayward v. Ford*, p. 107, attached hereto as Exhibit "1) (emphasis added).

> It carries us hunting, fishing, to school, packing our families on vacations.  People love this truck for a good reason and **it's got a great safety record**.  That's the first thing we ought to talk about.  (Alan Thomas, Opening Statement, *Hockensmith v. Ford*, p. 94, attached hereto as Exhibit "2.") (emphasis added).

> You get on to the next one is what happens in the Explorer, you're even safer.  **The real world data shows that Ford's safety record is good**. (Alan Thomas, Opening Statement, *Hockensmith v. Ford*, Ex. 2, p. 113) (emphasis added).

> The question that you have, if you have two vehicles in your driveway, a passenger car and an Explorer, which one would you get in and stand the best chance of coming back no matter what kind of accident you're involved in, **you would want to get in the Explorer every day of the week**. (Alan Thomas, Opening Statement, *Hockensmith v. Ford*, Ex. 2, p. 113) (emphasis added).

> Why are we here?  We're here because **Ford makes good cars and trucks**…We build cars and trucks that we have all driven, liked including Ford Explorers, and the Ford Explorer, ladies and gentlemen,

also is the widest selling sport utility vehicle ever made.  **Most popular.**
(Alan Thomas, Opening Statement, *Hockensmith v. Ford*, Ex. 2, p. 93).

First, consumers' perception of the safety of a vehicle is totally irrelevant to the determination of whether a vehicle is safe or dangerous.  Second, statements that Ford's SUV's have good overall safety records are expert opinions that require a basis in *Fed. R. Evid.* 702 and all associated common law precedent, as well as substantial authentication and foundation as to what these statements are even based upon, including the kinds of crashes and kinds of vehicles to which comparison is being drawn.  Marketing studies of consumer beliefs and reckless comments by defense counsel do not constitute expert opinions.

These kinds of arguments, if advanced in this case, have no relevance or probative value to the answer to the "simple" question, as characterized by the 11th Circuit Court of Appeals, of whether the RNS4G buckle installed in the Plaintiff's car was fit for its ordinary purpose of passenger restraint on the date of this crash. See *Easterling v. Ford Motor Company*, 3780 Fed. Appx. 834, 835 (11th Cir. 2019).

Furthermore, even if such evidence or statements had any marginal relevance, they serve only to confuse and conflate the issues, mislead the jury and force the Plaintiff to respond in kind, all in contravention of *Fed. R. Evid.* 403.  Accordingly, the Plaintiff requests that the Court prohibit Ford from making unsupported, unscientific and irrelevant statements that their products or the subject vehicle have a generally good safety record.

11

### 6.    EVIDENCE OR STATEMENTS BY COUNSEL CONCERNING THE SAFETY RECORD OF OTHER, DISSIMILAR VEHICLES OR SEATBELT BUCKLES.

Ford's trial counsel regularly defends similar cases by drawing improper comparisons to other vehicles, in order to support an argument that Ford's vehicle (or the buckle installed within the vehicle) is no worse than any other vehicle (or buckle).  This kind of evidence and argument have no bearing on the "simple" question, as characterized by the 11th Circuit Court of Appeals, of whether the RNS4G buckle installed in the Plaintiff's car was fit for its ordinary purpose of passenger restraint on the date of this crash. See *Easterling v. Ford Motor Company*, 3780 Fed. Appx. 834, 835 (11th Cir. 2019).  How the subject buckle performs in relationship to other, differently-designed buckles, is totally irrelevant to this simple issue.

Ultimately, defense counsel may attempt to improperly shift the focus of this case away from its RNS4G buckle to other buckles and other vehicles, for the purpose of placing the Plaintiff in the untenable position of having to prove that all of these "other buckles" and "other vehicles" are also unfit for their ordinary purposes in order to prevail in this case.  This argument is pure straw-man fallacy and calculated to cause a jury to disregard the simplicity of the legal principle at work in this case.  The following are examples of these inappropriate tactics:

> They claim that this one that these ladies were in is defective because it's too tall and too narrow.  **And I'm going to show you where it stacks up with all of the other vehicles so that you can decide**.  (Alan

Thomas, Opening Statement, *Hayward v. Ford*, Ex. 1, p. 119) (emphasis added).

Where does this Ford Explorer come in?  You will see utility vehicles, it's not exceptionally higher, **it's right in the middle**.  Look at others that we measure…**But within the vehicle class it's right in the middle.  When you look at how wide it is, let's see how the Explorer stacks up**.  When you look at the width, track width measured between the two tires of the vehicle.  **See whether the Ford Explorer stacks up?**  (Alan Thomas, Opening Statement, *Hayward v. Ford*, Ex. 1, p. 128-129) (emphasis added).

**No vehicle is designed** to go sideways at 40 mph and stay on all fours…**I don't think anybody is going to come into this courtroom for the plaintiff's side and tell you there is not another vehicle that would not have rolled over**.  (Alan Thomas, Opening Statement, *Hockensmith v. Ford*, Ex. 2, p. 103-105) (emphasis added).

Now we get down to brass tacks.  **If you stacked the Explorer up against all the other vehicles**, where does it come in all these things that Mr. Conley was talking about when you start talking about the vehicle height, center of gravity, track width, or even what he mentioned earlier calculations can be made because of static stability ratio which is a combination of track width and height, **where does the Explorer stack up if the plaintiffs are asking you to declare it and all other vehicles like it defective, where does it stack up?**  Where's the evidence?  (Alan Thomas, Opening Statement, *Hockensmith v. Ford*, Ex. 2, p. 114) (emphasis added).

The Plaintiff should not be required to fight a straw man fallacy as to how the buckle in this case "stacks up" against other buckles that have nothing to do with the simple question of whether or not this buckle was fit for its ordinary purpose of passenger restraint on the date of this incident.  The evidence and statements outlined herein would be irrelevant and immaterial to this issue, lack probative value and would potentially mislead and confuse the jury (as fallacious arguments are intended

to work).  Accordingly, the Court should prohibit such evidence and statements by order.  *Fed. R. Evid.* 401, 403.

### 7.  EVIDENCE OR STATEMENTS BY COUNSEL THAT THE SUBJECT FORD VEHICLE AND/OR TRW RNS4G BUCKLE MET THE FEDERAL MOTOR VEHICLE SAFETY STANDARDS ("FMVSS").

Based on their contentions in the Pretrial Order, it is anticipated that Ford may attempt to argue that because the seatbelt systems in the subject vehicle generally and allegedly complied with FMVSS sections 208, 209 and 210, Ford exercised due care in the manufacture of the vehicle and did not breach the implied warranty of merchantability.  *See* Pretrial Order, p. 12 [Doc. 122].  This argument is flawed and evidence supporting this argument should not be permitted.

First, the only issue in this case is the simple question of whether *this* RNS4G buckle was fit for its ordinary purpose of passenger restraint at the time of *this* crash, and Ford's asserted compliance with any portion of the FMVSS generally is not relevant to that inquiry.  The NHTSA system of compliance is one of self-certification, in which vehicle and equipment manufacturers self-certify that their products meet applicable standards; an argument that the general seatbelt restraint system in this general make and model of vehicle is generally compliant with certain FMVSS sections *because Ford says so* is both unhelpful circular logic and also not probative of whether or not the particular buckle in this particular case was actually fit for its ordinary purpose at the time of this particular crash.  See generally, "Understanding NHTSA's Regulatory Tools: Instructions, Practical Guidance, and

Assistance", p. 2.[1]  In other words, just because Ford Motor Company self-certifies that its RNS4G buckle is safe does not mean that any of its buckles are actually safe, just that Ford says that its buckles are safe.[2]

The probative value of allowing this evidence and potential argument is thus exceedingly low, but is substantially outweighed by the possibility of misleading and confusing the jury into falling for the argument that because the general seatbelt systems in this truck were self-certified by Ford to be safe, they must have been safe. *Fed. R. Evid.* 403.  The entire point of the argument is to give the seatbelt system the imprimatur of federal governmental approval, which is untrue and completely misleading.  *Fed. R. Evid.* 403.  The only inquiry in this case pertains to whether or not this buckle was fit for its ordinary purpose on the day of this crash – as the 11th Circuit stated, "[i]t's as simple as that."  *Easterling v. Ford Motor Company*, 3780 Fed. Appx. 834, 835 (11th Cir. 2019).

This evidence and prospective arguments should thus be prohibited by court order.

## 8.    EVIDENCE OR STATEMENTS BY COUNSEL THAT THE NATIONAL HIGHWAY TRANSPORTATION SAFETY ADMINISTRATION ("NHTSA") DECLARED THE SUBJECT FORD VEHICLE AND/OR TRW RNS4G TO BE SAFE.

---

[1] *https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/understanding_nhtsas_current_regulatory_tools-tag.pdf*

[2] Aside from the fact that there is an extensive recall history associated with the TRW RNS4G buckle that belies the suggestion that the federal self-certification standard advanced by Ford is sufficient to demonstrate the essential safety of the product.

15

The same rationale applies to any attempt by Ford to incorrectly and unfairly claim that specific governmental agency actions in the past have already decided the issue before the Court; Ford will be unable to introduce any evidence at trial to prove that the NHTSA has ever determined that either the subject vehicle or the RNS4G buckle are non-defective or safe by design, because no such determination exists. The Plaintiff asks the Court to prohibit Ford's counsel from even suggesting that any governmental agency has ever issued such a determination.

## 9.   EVIDENCE OR STATEMENTS BY COUNSEL OF GENERAL STATISTICS PERTAINING TO CRASHES.

The Plaintiff anticipates that Ford may also argue or attempt to introduce evidence of governmental statistics pertaining to the subject vehicle, similar vehicles, the subject buckle and/or similar buckles, for the essential purpose of showing that the subject vehicle and/or the subject buckle are no different or worse than any other vehicle or buckle.  No general statistics proffered by Ford in this case can be demonstrated to involve similar vehicles, similar buckles, similar crashes or otherwise provide any kind of assurance that the underlying incidents upon which the general statistics are based are in any way similar to the incident forming the basis of this lawsuit.  They are thus inadmissible.

As this federal circuit recognizes, because of the potential prejudicial impact of prior occurrences or incidents, this category of evidence is only admissible upon a showing by the offering party that the conditions of those incidents were

substantially similar to the present incident, and that the prior occurrences are not too remote in time.  See *Holland v. Walter Kidde Portable Equip., Inc.*, 2008 U.S. Dist. LEXIS 129388, (N.D. Ala. April 17, 2008) (citing *Jones v. Otis Elevator Co.*, 861 F. 2d 655, 661-662 (11th Cir. 1988) (further citation omitted).  There can be no showing in this case that any of the incidents underpinning general statistics that may be offered by Ford or Ford's experts are substantially similar to the subject incident.  Therefore, the court should preclude the use of general statistics altogether.

## 10.   EVIDENCE OR STATEMENTS BY COUNSEL CONCERNING HOW MANY PEOPLE FORD MOTOR COMPANY EMPLOYS IN ITS BUSINESS.

It is anticipated that Ford trial counsel will attempt to discuss the number of people employed by Ford.  The number of Ford employees throughout the world does not tend to prove or disprove any of the issues in this case.  Ford's only purpose for telling the jury that it employs a substantial number of people is to improperly elicit sympathy from the jury for those employees in hopes of mitigating any verdict against Ford.  It is clear that the wealth or poverty of civil litigants is inadmissible. See *Brough v. Imperial Sterling, Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002).  This is the epitome of unfairly prejudicial evidence, as it has no probative value whatsoever and is designed purely to prejudice the Plaintiff.  Any evidence or statement by counsel pertaining to the number of Ford employees in the world should be excluded by court order.  *Fed. R. Evid.* 401, 403.

**11.    EVIDENCE OR STATEMENTS BY COUNSEL CONCERNING FORD VEHCICLE SALES.**

Whether the subject vehicle is "popular" or a "best seller," or other such similar commentary, is irrelevant to the simple question of whether the RNS4G buckle installed on the Plaintiff's vehicle was fit for its ordinary purpose of passenger restraint at the time of this crash.  See *Easterling v. Ford Motor Company*, 3780 Fed. Appx. 834, 835 (11th Cir. 2019).  Such characterizations are simply the subjective opinions of unnamed persons and would be offered without any evidentiary support.  The following are examples of Ford trial counsel's use of this improper argument:

> In fact, [the Explorer] was the **best selling** for ten years running.  (Alan Thomas, Opening Statement, *Hayward v. Ford*, p. 124, Ex. 1) (emphasis added).

> We build cars and trucks that we have all driven, including Ford Explorers, and the Ford Explorer, ladies and gentlemen, also is the **widest selling sport utility vehicle ever made.  Most popular.**  (Alan Thomas, Opening Statement, *Hockensmith v. Ford*, p. 93, Ex. 2) (emphasis added).

The above-listed statements have been made repeatedly by Ford trial counsel in cases across the country, whether the vehicle involved is a Ford Explorer, Ford F-150, Ford Mustang or some other "popular" Ford vehicle.  These statements are prejudicial and inflammatory, and are designed merely to influence the jury to believe that because consumers perhaps like a vehicle, it is a good vehicle.  Many are the personal opinions of counsel, totally unsupported by evidence, and others are

simply inadmissible hearsay.  The Plaintiff asks that such statements and evidence be prohibited by court order.  *Fed. R. Evid.* 401, 403, 801.

## 12.    EVIDENCE OR STATEMENTS BY COUNSEL CONCERNING A LACK OF OTHER PROBLEMS WITH THE SUBJECT FORD VEHICLE.

The fact that others may have driven this kind of vehicle, with this kind of buckle, "without incident," is totally irrelevant to this case.  In addition to its complete lack of probative value as to any fact in issue, such "evidence" is unsupported hearsay, fails the substantial similarity test for the admission of evidence of other incidents and is unfairly prejudicial to boot.  See *Holland v. Walter Kidde Portable Equip., Inc.*, 2008 U.S. Dist. LEXIS 129388, (N.D. Ala. April 17, 2008) (citing *Jones v. Otis Elevator Co.*, 861 F. 2d 655, 661-662 (11th Cir. 1988) (further citation omitted); *Fed. R. Evid.* 401, 403, 801.  The following is an example of Ford trial counsel advancing such an improper argument at trial:

> **The rest of the evidence is that there were 20 prior Rent-a-Carers [sic] on this Explorer with no problem**…[t]he crash was April 2nd, 2000, 9:10 p.m. going northbound on I-596.  The evidence, she's traveling highway speeds, there's been absolutely no problem with the Explorer on this whole trip. (Opening Statement, *Hayward v. Ford*, Ex. 1, p. 112-113) (emphasis added).

Whether this kind of vehicle (or even this specific vehicle) with an RNS4G buckle was operated for years without incident is irrelevant to the simple issue of whether this buckle was fit for its ordinary purpose on this day in this crash.  The court should exclude this evidence by order.  *Fed. R. Evid.* 401, 403.

19

**13.    EVIDENCE OR STATEMENTS BY COUNSEL THAT TIRES, BRAKES OR OTHER MAINTENANCE-RELATED ISSUES CAUSED THE SUBJECT CRASH.**

The only question in this case as to the subject buckle is whether it was fit for its ordinary purpose.  See *Easterling v. Ford Motor Company*, 3780 Fed. Appx. 834, 835 (11th Cir. 2019).  There is no evidence to suggest that any other issue that may have existed with respect to the subject vehicle had any influence whatsoever on the flaws in the RNS4G buckle or the cause of the crash.  It would be speculative and not based on evidence if any of Ford's attorneys or witnesses were to suggest otherwise in testimony or arguments.  The Plaintiff requests that the Court exclude all such evidence or arguments by order.  *Fed. R. Evid.* 401, 702.

**14.    EVIDENCE OR STATEMENTS BY COUNSEL ASSERTING THAT ALLEGED PRODUCT MISUSE OR SPEED CAUSED THE SUBJECT CRASH.**

Based on Ford's contentions in the Pretrial Order, the Plaintiff anticipates that Ford will attempt to argue that the Plaintiff "misused" the subject vehicle by allegedly "exceeding the posted speed limit" and "driving at least between 52-66 MPH," and that if the Plaintiff had not been speeding, "there would have been significantly less energy associated with the crash."  Pretrial Order, p. 9-10 [Doc. 122].  This inflammatory and prejudicial argument is not outweighed by any probative value it may have and is riddled with errors and misrepresentations.

First, Ford clearly wishes to impermissibly argue that the "product" in this case was the entire vehicle, rather than the RNS4G buckle.  Pretrial Order, p. 8 [Doc.

122] ("The Easterling vehicle had been driven extensively and used for more than a decade prior to Easterling causing an accident and suffering injuries. This long history of use indicates that the implied warranty of merchantability was not breached."). The problem with this proposed argument is that the appellate court has already effectively determined that the "product" in this case is the seatbelt buckle, not the entire vehicle; the appellate court's *entire discussion* is about the buckle, not the vehicle. See *Easterling v. Ford Motor Company*, 3780 Fed. Appx. 834, 837-838 (11th Cir. 2019).

Second, the only reason that Ford would attempt to improperly conflate the product (the RNS4G buckle) with the entire vehicle is obviously to bootstrap their way into the argument that the vehicle was "misused" by the Plaintiff due to speed. This was calculated on Ford's part, because the appellate court also determined that there is no evidence in this case that the Plaintiff's RNS4G buckle was misused in any way. See *Easterling v. Ford Motor Company*, 3780 Fed. Appx. 834, 838 (11th Cir. 2019) ("The record contains no evidence, moreover, that Easterling used the seatbelt for some ill-purpose – say storing loose change or stashing chewing gum in the buckle slot. A body of 'reasonable and fair-minded men' could determine that a seatbelt in a car purchased today should not unexpectedly come undone in an accident ten years later due simply to wear and tear.") (further citation omitted).

It would thus be entirely inappropriate at trial for Ford to have the opportunity to argue that the Plaintiff is guilty of misuse of the RNS4G buckle installed in the

vehicle.  Ford clearly understands this, and attempts, inappropriately, to argue that the entire vehicle is the product in order to make the argument that speed constitutes misuse.  The court should reject this argument and prohibit Ford from making arguments or introducing evidence to attempt to suggest that the Plaintiff speed constituted a misuse of the RNS4G buckle.

The inherent problem with Ford's proposed argument is clear.  A seat belt buckle has no idea of the speed limit, but the buckle is supposed to stay buckled in a crash.  Ford will certainly not acknowledge through any witness on the record that its RNS4G buckles are likely to fail in impacts at 52-66 MPH.  The Plaintiff's speed thus cannot constitute a "misuse" of the seat belt buckle, and Ford should be prohibited from making this inflammatory argument or introducing irrelevant evidence to support it, as it is clearly designed to influence the jury to improperly consider the influence of speed in the case.  *Fed. R. Evid.* 401, 403.

Furthermore, even if this were not a settled issue, the law in Alabama is clear that in a case involving the failure of a safety-related component of a larger device such as a firearm or a motor vehicle, the "product" is the safety component, not the entire device.  See *Culpepper v. Hermann Weihrauch KG*, 991 F. Supp. 1397, 1401 (M.D. Ala. Nov. 5, 1997) (citing *Dennis v. American Honda Motor Co.*, 585 So. 2d 1336 (Ala. 1991); *General Motors Corp. v. Saint*, 646 So. 2d 564 (Ala. 1994)).

Even if (1) the appellate court had not already effectively implied through its analysis that the "product" is the RNS4G buckle, (2) if the appellate court had not

determined that there was no evidence of the Plaintiff's misuse of the buckle (3) if a speed of 52-66 MPH could constitute a "misuse" of a seatbelt buckle (a position Ford will never take) and (4) if Alabama courts did not consider a safety component of a larger product to be the "product" in cases like this, Ford has still another insurmountable problem with the argument it wants to advance – the misuse must not have been *foreseeable* to Ford.  See *Vigneulle v. Tahsin Indus. Corp. USA*, 2018 U.S. Dist. LEXIS 49986, at *54 (N.D. Ala. March 27, 2018) (citing *Sears, Roebuck & Co. v. Harris*, 630, So. 2d 1018, 1028 (Ala. 1993).  It would absolutely be foreseeable to Ford that a motorist would drive a vehicle between 52-66 MPH[3], and the misuse defense would never be available to them under these circumstances.

For these reasons, the Plaintiff requests that the Court prohibit Ford's counsel and any of its witnesses from presenting evidence or arguing that Easterling's speed somehow constituted a misuse of the RNS4G buckle.[4]

### 15.    EVIDENCE OR STATEMENTS BY COUNSEL PERTAINING TO THE ALLEGED EXPRESS WARRANTY PERIOD.

Ford recently produced documents to the Plaintiff that tend to suggest that Ford may intend to argue to the jury that the express warranty on the RNS4G buckle was five (5) years.  This is not a case in which the Plaintiff alleges a breach of any

---

[3] Assuming that the jury in this case even ultimately believes that Mr. Easterling was traveling 52-66 MPH.

[4] The Plaintiff asks the Court to note that the Defendant attempts to reserve "all available defenses contemplated by the Alabama Extended Manufacturer's Liability Doctrine.  *See* Pretrial Order, p. 12 [Doc. 122].  Even if this were an AEMLD case, Ford certainly is aware that the cause of a crash is generally inadmissible in a case involving an alleged defect in a safety-related product, since the whole point of the safety product is to protect consumers, i.e., people who have car crashes.  "It would be wholly inconsistent to allow the manufacturer of a safety device…to design a defective product and then allow that manufacturer to escape liability when the product is used for an intended use." *Dennis v. American Honda Motor Co.*, 585 So. 2d, 1336, 1340 (Ala. 1991).

express warranty, and evidence of the length of time that Ford elected to expressly warrant the seatbelt buckles in its vehicle is not relevant to any of the claims in this case.

Specifically, the arbitrary length of time chosen by Ford to warrant seatbelt buckles has no relevance or probative value to the question of whether the RNS4G buckle installed in the Plaintiff's car was fit for its ordinary purpose of passenger restraint on the date of this crash. See *Easterling v. Ford Motor Company*, 3780 Fed. Appx. 834, 835 (11th Cir. 2019).  Such evidence has no relevant purpose and is intended only for the purpose of prejudicing the jury by making them believe that the warranty in this case expired after five (5) years.  *Fed. R. Evid.* 401, 403.

**16.    EVIDENCE OR STATEMENTS BY COUNSEL CONCERNING OPINIONS AND/OR SPECULATIVE STATEMENTS BY LAW ENFORCEMENT AND/OR FIRST RESPONDERS CONCERNING THE SUBJECT CRASH.**

The Plaintiff anticipates that Ford may attempt to offer into evidence inadmissible opinion testimony from police officers and/or first responders to the scene of the subject crash.  There is no evidence in this case that any of these individuals personally witnessed this crash, have any specific training or experience in forming accident reconstruction opinions or may be qualified as experts in that field.

To the extent that Ford intends to elicit such testimony, the testimony would go far beyond any of these witnesses' perceptions and enter the realm of expert

opinion testimony for which they are not qualified.  *Fed. R. Evid.* 702; see *Kleine v. King*, 2010 U.S. Dist. LEXIS 80366, at *12-*14 (S.D. Ala. Aug. 5, 2010).  The Plaintiff asks that the Court enter an order prohibiting any attempts to elicit such testimony.

## 17.    INTRODUCTION OF THE POLICE REPORT CONCERNING THE SUBJECT CRASH.

Under Alabama law, police accident reports are considered inadmissible hearsay.  See *Crusoe v. Davis*, 176 So. 3d 1200, 1203-1204 (Ala. 2015).  If Ford seeks to enter the police report in this case into evidence, the Plaintiff objects on the legal ground that the report is hearsay and asks that the Court determine that the report is inadmissible.   To the extent that the Court is inclined to allow the introduction of the report into evidence, the Plaintiff requests that all content on the report constituting impermissible opinion evidence for which no foundation exists be properly redacted and not presented to the jury in any way.  *Fed. R. Evid.* 702; see *Kleine v. King*, 2010 U.S. Dist. LEXIS 80366, at *12-*14 (S.D. Ala. Aug. 5, 2010).

## 18.    EVIDENCE OR STATEMENTS BY COUNSEL THAT FORD MOTOR COMPANY IS INNOCENT UNTIL PROVEN GUILTY, OR OTHER SUCH SIMILAR EVIDENCE OR STATEMENTS.

Ford trial counsel have a history of stating in trials that Ford is "innocent until proven guilty," a criminal trial standard that has no relevant place in a civil trial and is a deliberate attempt by the Defendant to confer an improperly high burden of proof

on the Plaintiff. *Fed. R. Evid.* 401, 402, 403. The following is a specific example of Ford's use of this improper argument:

> The plaintiffs have what they call the burden of proof, and our legal system is very basic that we're **innocent until proven guilty**, and that's the way we come to you today…Our law has that burden of proof, and because we are **innocent until proven guilty**, it's sort of like a football game. (Alan Thomas, Opening Statement, *Hockensmith v. Ford*, Ex. 2, p. 98) (emphasis added).

The Plaintiff requests that the court specifically instruct Ford trial counsel not to make this argument or any similar argument at the trial of this case.

## 19.   EVIDENCE OR STATEMENTS BY COUNSEL CONCERNING ANY OPINION OR EXPERT TESTIMONY NOT PREVIOUSLY DISCLOSED.

The Plaintiff, like Ford, requests that the Court limit Ford's experts not to testify concerning any opinions that have not been previously disclosed by Ford, for the same reasons that Ford states in its Motion in Limine: "[e]xclusion of any undisclosed opinions is appropriate because [the Plaintiff] cannot prepare to cross examine [Ford's experts] about opinions of which [he] is unaware." Ford's Motion in Limine, p. 13 [Doc. 127].

The Plaintiff asks the Court to preclude Ford's experts from offering any opinions previously undisclosed to the Plaintiff.

## 20.   EVIDENCE OR STATEMENTS BY COUNSEL APPEALING TO SYMPATHY AND/OR CONCERNING THE WEALTH OR POVERTY OF THE LITIGANTS.

Ford lawyers may also infer, if not outright state, that a verdict against Ford will force Ford to close plants, cause Ford employees to lose their jobs, increase Ford insurance rates or drive up the costs of Ford's vehicles.  It is clear that the wealth or poverty of civil litigants is inadmissible.  See *Brough v. Imperial Sterling, Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002).  Remarks implying that a verdict could harm Ford or its employees financially must be excluded for the same reason that the Plaintiff cannot plead for a verdict based upon the fact that the Plaintiff may be poor or disadvantaged.  Such evidence or statements by counsel are improper under existing case law and *Fed. R. Evid.* 401, 403 and 802 and should be excluded by court order.

**21.    EVIDENCE OR STATEMENTS BY COUNSEL PERTAINING TO FORD MOTOR COMPANY OR OTHER COMPANIES BEING "DEEP POCKETS" OR PERTAINING TO THE PLAINTIFF ATTEMPTING TO "WIN THE LOTTERY," SEEKING "JACKPOT JUSTICE," OR OTHER SUCH SIMILAR INFLAMMATORY EVIDENCE OR ARGUMENTS.**

The Plaintiff anticipates that Ford trial counsel may refer to this trial as some kind of a "lottery," or "cash register" case, or an attempt at "jackpot justice" because Ford has "deep pockets."  These are clearly prejudicial statements, with no probative value, made purely to inflame the passions of the jury, to cast aspersions on the Plaintiff and the Plaintiff's attorneys' motives in filing this lawsuit and to divert the jury from the real issues in this case.

Because of the prejudicial and inflammatory nature of such argument, any suggestion that the Plaintiff is interested in such things as "hitting it big," "gambling," "playing the lottery," "it's all about the money," or other such similar

27

statements, instead of compensation for being injured, should be excluded by court order. *Fed. R. Evid.* 401, 402, 403, 702.

## 22. EVIDENCE OR STATEMENTS BY COUNSEL THAT THE PLAINTIFF'S ATTORNEYS HAVE A CONTINGENCY FEE AGREEMENT WITH THE PLAINTIFF.

There is no possible relevance to the Defendant making an inquiry into the nature of a contingency fee agreement (or any fee arrangement) between the Plaintiff and his attorneys in this case. When a contingency fee is not at issue, it is "improper and prejudicial" to bring it up. *Stoner v. Eden*, 199 Ga. App. 135 (1991). Evidence of a contingency fee, which is probative of nothing, is inadmissible, and argument concerning a contingency fee would be doubly wrong. *Id.* at 137.

Furthermore, to allow Ford to introduce evidence of a contingent fee would inject the Plaintiff's financial circumstances into the case. It is settled that "[a] jury's resolution of the issues in a case must be based upon applicable rules of law and the evidence properly presented at trial, 'not upon the economic condition of either party or the degree of burden that might result from a verdict or judgment.'" *Holt v. State Farm*, 507 So. 2d 388, 391 (Ala. 1986) (quoting *Allison v. Acton-Etherdige Coal Co.*, 268 So. 2d 725, 729 (Ala. 1972)). Federal district courts in the 11th Circuit recognize these principles, and it is clear that the wealth or poverty of civil litigants is inadmissible. See *Brough v. Imperial Sterling, Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002).

Furthermore, *Fed. R. Evid.* 401 and 402 require exclusion of this evidence, because the financial relationship the Plaintiff has with his attorneys is of no consequence to the question of whether the RNS4G buckle in this case was fit for its ordinary purpose of passenger restraint, and the nature and extent of the Plaintiff's injuries.  The Plaintiff asks that the Court instruct Ford's attorneys not to make such inquiries or arguments during the course of the trial.

## 23.    EVIDENCE OR STATEMENTS BY COUNSEL CONCERNING THE TIMING OF THE PLAINTIFF'S DECISION TO HIRE ATTORNEYS.

The Plaintiff further anticipates that Ford trial counsel will question the Plaintiff as to when he hired his attorneys, serving the sole purposes of portraying the Plaintiff and his attorneys as disingenuous or greedy.  There is no relevant purpose to an inquiry concerning the Plaintiff's choice to retain counsel that he clearly needed in this case, and any minimal purpose that Ford can conjure in response to this motion would be vastly outweighed by its prejudicial effect.  The Plaintiff asks the Court to enter an order precluding all such inquiries and arguments at trial.  *Fed. R. Evid.* 401, 403.

**DATED:**    This the 17th day of January, 2020.

/s/ Andrew J. Moak
Andrew J. Moak
State Bar No.:  ASB-3266-N66M
SHUNNARAH INJURY LAWYERS
2900 1st Avenue South
Birmingham, Alabama 35233
P 205.983.8163
F 205.983.8463
amoak@asilpc.com
One of the Attorneys for the Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I have on this date provided the following with a copy of the foregoing via the *CM/ECF* system:

D. Alan Thomas
Paul F. Malek
Elizabeth P. Davis
Huie, Fernambucq & Stewart, LLP
Three Protective Center – Ste. 200
2801 Highway 280 South
Birmingham, Alabama 35223
P 205.251.1193
F 205.251.1256
athomas@huielaw.com
pmalek@huielaw.com
edavis@huielaw.com

Melody H. Eagan
Lightfoot, Franklin & White
400 20th Street North
Birmingham, Alabama 35203
P 205.581.0777
F 205.581.0799
meagan@lightfootlaw.com

/s/  Andrew J. Moak
OF COUNSEL