# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

JERRY W. EASTERLING,      )
                           )
     Plaintiff,         )
                           )
v.                      )     Case No. 2:14-cv-2353-JEO
                           )
FORD MOTOR COMPANY,    )
                           )
     Defendant.      )

## MEMORANDUM OPINION AND ORDER

The court[1] has before it two motions in limine, one filed by each party, covering a variety of topics. (Docs. 127 & 128).[2] The court heard arguments on the motions on February 4, 2020, and, at the court's request, counsel for Plaintiff provided documents to the court related to two of the issues addressed below. Those documents were filed under seal. (*See* Doc. 141). The court heard additional arguments on February 6, 2020. Each motion will be addressed below. Upon consideration, the motions are each granted in part and denied in part.

---

[1] The action was originally assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and the court's general order of reference dated January 2, 2015. The parties have since consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 4).

[2] References to "Doc(s). ___" are to the document number(s) of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk.

# I.

## INTRODUCTION

Defendant's motion (doc. 127) seeks to exclude evidence, references or comment by Plaintiff, his witnesses, and/or counsel for Plaintiff on the following fifteen topics:

(1) evidence or argument concerning other lawsuits, complaints, or warranty claims;

(2) evidence or argument concerning other broken seatbelt buckles;

(3) evidence concerning any prior recall campaign;

(4) any opinions from his experts whose testimony was previously excluded by the court;

(5) any testimony from Donald Phillips and Eric Van Iderstine not previously disclosed by them;

(6) testimony from Van Iderstine concerning his testing, "which was premised on conditions unrelated to the circumstances surrounding Easterling's accident";

(7) any testimony about what a consumer would expect or know regarding a seatbelt buckle;

(8) documents or information not produced by Plaintiff and/or expert opinions and work not disclosed during the discovery process;

(9) size or specialization of Ford's counsel;

(10) unrelated products liability litigation;

(11) verdicts, judgments, settlements or settlement offers;

(12) Ford's financial condition or relative wealth or poverty of the parties;

(13) monetary fees previously paid by Ford and/or other manufacturers in unrelated cases to Ford's experts in this case;

(14) reference to Plaintiff's "interpretation" of Ford's documents or Ford's "state of mind"; and

(15) reference to the "purpose" of the lawsuit being "consumer safety," or asking the jury to "send a message" or act as "the conscience of the community."

Plaintiff does not challenge Defendant's position on topics enumerated in 4, 10, 11, and 12, unless Ford "opens the door" on any of these issues. (Doc. 130). Accordingly, with regard to these issues, the motion is **GRANTED**. Additionally, with regard to topic number 5 – previously non-disclosed expert testimony – Plaintiff agrees that all expert testimony should be limited to what was disclosed in their reports and later "fleshed out in more detail in their respective depositions." (Doc. 130 at 7). With this caveat, the motion is **GRANTED** with regard to topic number 5. Additionally, at the first hearing, Defendant's counsel represented that they do not intend to offer any "testimony about what a consumer would expect or know regarding a seatbelt buckle," thus mooting the court's consideration of that item, which is enumerated in the motion as number 7.

Plaintiff's motion (doc. 128) seeks to exclude evidence, references or comment by Defendant, Defendant's witnesses, and/or counsel for Defendant on the following twenty-three topics:

(1) Ford's safety record and/or good character;

(2) that Ford's employees, counsel, family, friends or others approve of and drive Ford vehicles, that Ford is a "family company," or that a judgment will harm Ford employees or raise the price of Ford vehicles;

(3) statements that counsel or any witnesses drive a Ford vehicle;

(4) statements that counsel or any witness owns or drive a vehicle containing a TRW RNS4G buckle;

(5) overall safety record of the subject vehicle;

(6) safety record of other, dissimilar vehicles or seatbelt buckles;

(7) that the subject vehicle and/or TRW RNS4G buckle met the Federal Motor Vehicle Safety Standards;

(8) that the National Highway Transportation Safety Administration declared the subject vehicle and TRW RNS4G buckle to be safe;

(9) general statistics pertaining to crashes;

(10) how many people Ford employs;

(11) Ford vehicle sales;

(12) lack of other problems with the subject vehicle;

(13) that the tires, brakes or other maintenance-related issues caused the subject crash;

(14) that misuse or speed caused the subject crash;

(15) the alleged express warranty period;

(16) opinions and/or speculative statements by law enforcement and/or first responders concerning the subject crash;

(17) the police report concerning the subject crash;

(18) that Ford is innocent until proven guilty, or other such similar evidence or statements;

(19) opinion or expert testimony not previously disclosed;

(20) testimony appealing to sympathy and/or concerning wealth or poverty of litigants;

(21) that Ford or other companies are "deep pockets: or Plaintiff is attempting to "win the lottery," seeking "jackpot justice" or other similar statements;

(22) that Plaintiff's attorneys have a contingency fee agreement with Plaintiff; and

(23) timing of Plaintiff's decision to hire attorneys.

Defendant states that it does not dispute the topics enumerated in items 2, 3, 4, 6, 8, 10, 11, 16,17-23,[3] with certain noted caveats. (Doc. 131 at 1-3). With regard to topics 2-4, Ford "reserves the right to rebut or respond to evidence or comment(s) made in front of the jury which may enhance the relevancy of such evidence." (*Id*. at 1-2). Accordingly, the motion is **GRANTED** with regard to these issues. Additionally, although Ford does not generally dispute the topics enumerated in items 13 and 14, the court will address its particular caveats below as they are more substantive. (*See id*. at 2-3).

---

[3] Number 6 (safety record of other vehicles or seatbelt buckles) and number 16 (statements by individuals at the scene of the accident) were conceded by Plaintiff based on representations by Defendant at the hearing that counsel does not seek to introduce such evidence. Accordingly, there is nothing further for the court to consider as those issues are moot.

The court addresses Defendant's motion first and then moves to Plaintiff's motion. In addressing both motions, the court keeps in the forefront the fact that this case is one for breach of the implied warranty of merchantability and is guided by the Eleventh Circuit's opinion reversing summary judgment on that claim. "Under Alabama law, proving an implied-warranty-of-merchantability claim requires 'the existence of the implied warranty, a breach of that warranty, and damages proximately resulting from that breach.'" *Easterling v. Ford Motor Co.*, 780 F. App'x 834, 835 (11th Cir. 2019) (citations omitted). A "breach [of an implied warranty] occurs when goods are not fit for the ordinary purposes for which they are used." *Id.* Additionally, there is a "clear distinction between products liability and warranty liability under Alabama law" and "defect is not an element of an implied-warranty claim . . . ." *Id.* at 836 (quotation marks and citations omitted).

## II.

## DEFENDANT'S MOTION IN LIMINE (Doc. 127)

### A. Other Lawsuits, Complaints and Warranty Claims[4] (#1)

Defendant seeks to exclude evidence of other lawsuits, complaints or warranty claims involving allegedly broken seatbelts sold by Ford as irrelevant or, in the alternative, unduly prejudicial and confusing. (Doc. 172 at 2-5). Specifically,

---

[4] As discussed below, Plaintiff seeks to introduce evidence of other warranty claims only. To the extent that the motion seeks to exclude other lawsuits or claims, it is **GRANTED**.

Defendant contends such evidence is admissible only if Plaintiff establishes substantial similarity between his incident and the situations that gave rise to any other lawsuits, complaints or warranty claims. (*Id*. at 2-3). Additionally, Defendant argues that the fact "[t]hat another customer may have had a broken spring in a seatbelt buckle – or simply complained of having one – does not make it 'more . . . probable' that Easterling's buckle was non-merchantable." (*Id*. at 3). Finally, Defendant asserts that the probative value of this evidence is outweighed by the danger of unfair prejudice, confusion of issues, undue delay, and presentation of cumulative evidence. (*Id*. at 4-5).

Plaintiff responds that this evidence should be admitted. Specifically, Plaintiff states that Defendant has produced evidence via other warranty claims where consumers complained that a RNS4G buckle in a Ford vehicle inadvertently unlatched during the operation of the vehicle, including in accidents.[5] (Doc. 130 at 2). Plaintiff asserts that this evidence can be introduced to show "the lack of safety for intended use" of the instant buckle. (*Id*. at 2-3). Plaintiff contends that the buckle was not fit for the ordinary purpose for which a seatbelt buckle is used – to latch a

---

[5] Upon request at the hearing on February 4, 2020, counsel for Plaintiff provided the court and counsel for Defendant two spreadsheets detailing the warranty claims he sought to introduce, and the court ordered these documents filed under seal. (*See* Doc. 141). The spreadsheets pertain to warranty claims made on F-150s, F-250s and F-350s from 2001 until 2004 and contain detailed information about each warranty claim, including, but not limited to: the year of the vehicle, VIN number, complaint made by the customer, and the technician's notes as to what, if anything, was done to remedy the warranty claim. (*See id*.)

seatbelt and keep it latched until it is unlatched by the consumer. As such, Plaintiff argues that other "complaints, warranty claims and lawsuits which evidence the RNS4G buckle was inadvertently coming unlatched is relevant and material to the buckle's 'lack of safety for intended uses,' the crux of what the jury is to determine." (*Id*. at 3).

Both sides agree in their briefs that the court should evaluate the admissibility of this evidence using the "substantial similarity" doctrine.[6] (Doc. 127 at 2; doc. 130 at 3-4). It is well settled in cases dealing with a products liability claim that "[t]his evidentiary doctrine applies when one party seeks to admit prior accidents or occurrences involving the opposing party, in order to show, for example notice, magnitude of the danger involved, the party's ability to correct a known defect, *the lack of safety for intended uses*, strength of a product, the standard of care, and causation." *Heath v. Suzuki Motor Corp*., 126 F.3d 1391, 1396 (11th Cir. 1997) (citation, footnote, and internal marks omitted) (emphasis added). The two prongs of the "substantial similarity" doctrine have been summarized as follows:

> Because of the potential prejudicial impact of prior accidents, courts have developed limitations governing their admissibility. First, conditions substantially similar to the occurrence in question must have caused the prior accident. . . . Second, the prior accident must not have occurred too remote in time. . . . Determining the remoteness of evidence is within the trial judge's discretion.

---

[6] After some questioning at the hearing on February 6, 2020, Plaintiff's counsel retreated from this blanket agreement and agreed with Defendant that this test applies in products cases.

*Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988) (citations omitted).

Thus, "before evidence of prior accidents or occurrences is admitted into evidence, the proponent of such evidence must show that conditions substantially similar to the occurrence cause[d] the prior accidents." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015) (citation omitted). In addition to the substantial similarity and remoteness inquiries, "[t]he admission of such evidence is also subject to the reasonable discretion of the trial court . . . as to whether the prejudice or confusion of issues which may probably result from such admission is disproportionate to the value of the evidence." *Heath*, 126 F.3d at 1396, n.13 (citation omitted).

To be clear, "substantial similarity" does not require that the prior occurrence be an identical match to the accident that forms the basis of the plaintiff's claims; to the contrary, the inquiry is flexible and context-specific. *See, e.g., Sorrels*, 796 F.3d at 1287 ("The 'substantial similarity' doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence."); *Borden, Inc. v. Florida East Coast Ry. Co.*, 772 F.2d 750, 755 (11th Cir. 1985) ("The conditions surrounding the two incidents were similar enough to allow the jury to draw a reasonable inference concerning FEC's ability to foresee this type of vandalism and its results. . . . Although the results of the two incidents were dissimilar, this difference is

insubstantial in considering the issue of the foreseeability of this type of vandalism.").

While the above discussion is clearly applicable in products liability cases, the first question before the court is whether the same substantial similarity test is applicable in an implied warranty of merchantability case. The parties have not pointed to any Alabama or Eleventh Circuit case law answering that question, and the court has found none. "Defectiveness and unfitness are two distinct concepts under Alabama law," and that "the Supreme Court of Alabama reaffirmed a 'clear distinction' between products liability and warranty liability under Alabama law." *Easterling*, 780 F. App'x at 836. A products case requires the plaintiff to prove that the product suffered from a defect, but a "'defect' is not an element of an implied-warranty claim" and instead, Plaintiff must show whether "the seatbelt at issue was not 'fit for the ordinary purpose for which [seatbelts] are used.'" *Id*. (quoting Ala. Code § 7-2-314).

While the Eleventh Circuit has made it clear that there is a clear distinction between these cases, the undersigned cannot abandon the substantially similar test noted by the Court in products cases. It is instructive on the present issue concerning an implied warranty of merchantability case such as this. *See Davidson Oil Country Supply, Inc. v. Klockner, Inc.*, 908 F.2d 1238, 1245 (5th Cir. 1990) (applying a similarity test in a warranty of merchantability case). While Plaintiff is not required

to establish the particular defect that caused the product to be "unfit" and only must show that the product was not fit for its ordinary purpose for which it is used, the court believes that Federal Rules of Evidence 401 & 402 require that the court determine the relevancy of the evidence, and balance that relevancy, or lack thereof, with the concerns addressed by Rule 403.

As to relevancy, the court concludes that other warranty evidence may be relevant to the issue of whether the buckle was fit for its ordinary intended use as a passenger restraint. Simply put, information that the seat belt would not stay fastened, or would come unlatched while driving, goes directly to the seatbelt's fitness for ordinary use. A seatbelt clearly is intended to remain continuously latched. Defendant argues that the evidence is not relevant because there is no indication of the cause of the unfastening or releasing of the seatbelt in these documents. While this fact is true, it does not mean that all such evidence is due to be excluded. Additionally, the court rejects Defendant's contention that the court must limit the inquiry to Easterling's seatbelt in particular. The court does not so narrowly construe the Eleventh Circuit's opinion. Instead, "the seatbelt at issue" concerns the RNS4G buckle. *See Easterling*, 780 F. App'x at 836.

Taking into account these considerations, to determine which warranty claims, if any, the court will allow, the court must require that Plaintiff identify for the court and Defendant's counsel those warranty claims on the Excel spreadsheet

he believes are substantially similar to the circumstances in this case. Counsel will be afforded until **Saturday, February 8, 2020, at 6:00 p.m.**, to identify those claims. Counsel is to file a notice of those claim by that time in the court's electronic filing system. The notice should identify the particular claim by number and provide the court with an explanation of the reason or reasons counsel believes each identified claim to be admissible. Defendant will have until **noon on Monday, February 10, 2020**, to file any response. Accordingly, this part of the motion is **CONTINUED FOR FURTHER CONSIDERATION**.

### B. Other Broken Seatbelt Buckles (#2)

Ford seeks to preclude Plaintiff from introducing any evidence concerning other seatbelt buckles that may have broken at an unspecified point and for unspecified reasons. (Doc. 127 at 6-7). In particular, Defendant points to the deposition testimony of Van Iderstine who found the exemplar buckles that he examined in salvage yards. (*Id*. at 6). Defendant maintains the fact "that other buckles, found in a salvage yard, may contain broken springs – which could have fractured for any reason – makes it no more probable that Easterling's buckle is non-merchantable. Fed. R. Evid. 401." (*Id*. at 7). Defendant also argues that this evidence is a way to bring other incident evidence without meeting the substantial similarity test. (*Id*.).

Plaintiff maintains that this evidence is relevant and admissible. (Doc. 130 at 4-5). Specifically, Plaintiff contends that the purpose of introducing this evidence is not to introduce "other similar incidents," but that it is "a bi-product of his investigation and evaluation of the RNS4G buckle and determining the effect broken return springs have on the operation and specifically the latching/unlatching of the buckle."[7] (*Id*. at 5). Plaintiff insists that the jury needs to hear the basis for Van Iderstine's opinion and results of his investigation and evaluation, and Defendant will have the opportunity to cross-examine Van Iderstine regarding his opinions, as well the other buckles. (*Id*.).

It is evident that the testing of other broken buckles was necessarily a part of Van Iderstine's testing. Accordingly, to assist the jury in having a full understanding of his testimony requires that they hear about the use of other broken buckles. That, however, is all that is required. The jury does not need to hear how the belts were

---

[7] According to Plaintiff,

> [V]an Iderstine, as part of his investigation and evaluation of the RNS4G buckle and its propensity to unlatch inadvertently, initially examined the subject buckle via a CT scan. As a result of this scan, it was seen that the plastic return springs were fractured. To further his investigation and evaluation, [V]an Iderstine went searching for exemplar RNS4G buckles to evaluate and test, to determine what effect these fractured springs may have on the ability of the buckle to remain latched. As a result of this search, [V]an Iderstine found several RNS4G buckles in certain vehicles in salvage yards with similar fractured return springs, some of which he used to evaluate the effect of these broken springs.

(Doc. 130 at 4).

located, how long it took to locate them, or how many there were.  It is only essential that they understand Van Iderstine did his analysis using other broken buckles and why he did that.

## C.  Prior Recall Campaign (#3)

Defendant seeks to preclude Plaintiff from introducing evidence of the 01S21 recall. (Doc. 127 at 8-10). The recall pertained to certain Ford vehicles manufactured in 2001 to test and, if necessary, replace seatbelt buckles that did not latch properly.[8] (*Id*. at 8).  Ford maintains that the recall concerned an entirely different buckle than the one at issue here, and the buckle here incorporated the corrective actions taken as part of the recall.  (*Id*. at 8-9).  As such, Ford argues that evidence concerning the recall is irrelevant, or, in the alternative, unduly prejudicial and confusing.  Fed. R. Evid. 401, 403.

Plaintiff contends, however, that the evidence is relevant and admissible. (Doc. 130 at 5-7).  In particular, Plaintiff points to recall documents that "went to consumers and Ford dealers which described that an indication of a defective or problem buckle was that the release button was not returning to its home position upon latching, which could result in the tongue being 'easily removed from the

---

[8] As background, Ford determined that a certain buckle, used in the 2001 model year for a variety of vehicles, could have a potential latch concern.  (Doc. 127 at 8).  Ford states that it "initiated the recall to address the possibility that certain buckles 'may not fully latch' if the restraint was fastened too slowly or using very low force."  (*Id*.).

buckle by wiggling the tongue back and forth laterally.'" (*Id*. at 5). Plaintiff

contends the recall is relevant because:

> Ford is contending in this case that the broken return springs which operate to return the button to its full home position when the buckle is both latched and unlatched, have no responsibility for operation of the buckle once it is in a latched condition. Ford contends the springs only responsibility is with the return of the button once the buckle is unlatched. However, this is contrary to what it advised consumers and its own dealers when it indicated that a symptom of a bad buckle was that the button was not returning to home when latched, which is one of the main jobs of the return springs. These documents are an admission against interest of Ford that in this model buckle, if the button is not returning to its home position when latched, there is a latching problem with that buckle. The problem (a non-returning button) and the consequence (unlatching) that Ford understood and confronted in 2001, are the same faults that placed the subject buckle in a "compromised state" where the "functionality of the button is…no longer as it was intended, and it has rendered the buckle compromised, such that the lock bar can come out of position."

(*Id*. at 6).

In the abstract, the court agrees with Defendant that the recall is not relevant

to the issue here. That being said, the court agrees with Plaintiff in that the

statements in the recall documents as represented by Plaintiff[9] are an admission by

Defendant as to the proper functioning of the buckle, and, as such, as to whether the

instant seatbelt was fit for its ordinary use. The motion is **DENIED** to the extent

that the prior recall can be used as an admission, a statement against interest, or for

---

[9] Plaintiff's counsel upon request of the court submitted the recall documents at issue for the court's review. (Doc. 141).

impeachment purposes. The recall cannot be used for any other purpose and the court may give the jury a limiting instruction regarding the use of this evidence pursuant to Federal Rule of Evidence 105, if requested and required by the evidence. ("If the court admits evidence that is admissible . . . for a purpose – but not . . . for another purpose – the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.").

### D. Van Iderstine Testing (#6)

Defendant seeks to exclude testimony from Van Iderstine regarding his testing of the buckle where Van Iderstine pushed the button down an additional 1.2 mm beyond the 1.72 mm position documented by the CT scan of Plaintiff's latched buckle and latch plate after the accident. (Doc. 127 at 14-17). Defendant argues that this evidence is not relevant as to causation because it only proves that a buckle, subject to conditions unlike those experience by Plaintiff, could unlatch. (*Id*. at 15-16). Additionally, Defendant argues that the evidence should be excluded under Rule 403 because the jury may be led to believe that, because a buckle could unlatch under distinct and unusual circumstances, so too did Plaintiff's buckle. (*Id*. at 16). Finally, if the court allows the evidence, Defendant requests a limiting instruction. (*Id*. at 16-17).

Plaintiff responds that excluding such evidence is in direct contradiction of the Eleventh Circuit's opinion in this case. (Doc. 130 at 8-9). More specifically,

Plaintiff points to the use of Van Iderstine's testimony by the Eleventh Circuit in its analysis that there was sufficient evidence for a jury to find that Plaintiff's seatbelt was not "fit" for its ordinary intended use of passenger restraint. (*Id*.).

Defendant's objections to this evidence go to the weight of the evidence and not to its admissibility. As such, they are more properly the subject of cross examination. Defendant's motion to exclude this evidence is **DENIED**. To the extent Defendant still requests a limiting instruction of any kind, it is to be submitted to the court and Plaintiff's counsel for consideration well in advance of Van Iderstine's testimony.

### E.  Documents Produced (#8)

Defendant moves to exclude "any and all evidence, testimony, exhibits, questions, references, and arguments concerning any documents not produced or disclosed and/or opinions by Plaintiff's designated expert witnesses not previously produced during discover." (Doc. 127 at 24). Plaintiff generally agrees that neither party should be able to surprise the other with undisclosed documents or testing or expert opinions. (Doc. 130 at 13). Plaintiff does note, however, that the way in which the issue is presented seems to preclude Plaintiff from using documents Ford and TRW have produced in this case. (*Id*.). The court does not interpret the motion so literally and does not view the motion as intending to prevent such preclusion.

The motion is **GRANTED** to the extent that neither party may present evidence not disclosed in this case.

### F.  Size or Specialization of Ford's Counsel (#9)

Defendant moves to exclude Plaintiff from referring to or offering evidence regarding "whether the attorneys for Ford . . . regularly represent Ford or other corporations or insurance companies in lawsuits; that they specialize in product liability cases or cases involving 'car rollovers;' that they represent Ford across the country in lawsuits 'just like this one;' that defense counsel is supervising, coordinating, regional, or national counsel for Ford or some other automobile manufacturer; the number of attorneys who are members of the firms in which Ford's attorneys practice or the number of attorneys or firms who have appeared on Ford's behalf in this case . . . ."  (Doc. 127 at 26).  Similarly, Defendant seeks exclusion of statement characterizing counsel as "hired guns" and the like.  (*Id*.).  Plaintiff concedes this issue, except to the extent that it may limit Plaintiff's inquiry of Fords' experts.  (Doc. 130 at 14).

The court agrees with Defendant that Plaintiff may not characterize counsel for Ford as described by the motion and Plaintiff agrees that he "has no plans to refer to counsel as 'hired guns.'"  (*Id*.).  In that sense, the motion is **GRANTED**. However, the argument by Plaintiff is well-taken, in that he may inquire as to Ford's

experts regarding their credibility and biases as permitted by the Rules. To the extent that the motion seeks to exclude such questioning, it is **DENIED**.

### G. Fees Paid to Experts by Ford and other Manufacturers (#13)

Defendant seeks to exclude any reference to the money previously paid by Ford and/or other manufacturer to expert witnesses in unrelated cases. (Doc. 127 at 31). Defendant contends that such evidence is not relevant and the probative value is outweighed by its prejudicial effect. (*Id*.) (citing Fed. R. Civ. P. 401 & 403). Defendant also contends that such evidence is a way to "backdoor" evidence of other incidents without showing substantial similarity to the issues here. (*Id*.). Plaintiff objects to the exclusion of this evidence because it would prohibit the Plaintiff from inquiring with Ford's experts as to matters such as (1) the number of times and frequency of testimony for Ford, (2) any impeachable testimony in contradiction with other testimony provided for Ford or similarly-situated car manufacturers, (3) the history, length and extent of the experts' relationship with Ford and Ford's lawyers providing expert testimony in cases and (4) the history and extent of the compensation paid to the experts by Ford for their testimony. (Doc. 130 at 15).

The court agrees with Plaintiff. Inquires of experts, such as the ones suggested by Plaintiff, bear on the credibility of the opinions to be offered by the expert. Such questioning is appropriate and admissible. The motion is **DENIED** with regard to this issue.

## H.  Plaintiff's Interpretation of Ford Documents or Ford's "State of Mind" (#14)

Defendant seeks to exclude testimony by individuals, including Plaintiff's experts, interpreting Ford documents as evidence of Ford's "state of mind."  (Doc. 127 at 32). Defendant also moves to exclude Plaintiff's witnesses from testifying about the meaning or contents of Ford documents that are inadmissible or have not been admitted into evidence, or that can be understood by the jury without expert assistance.  (*Id*.).

Plaintiff responds to this argument by first stating that Defendant does not specify which documents it seeks to prevent the Plaintiff's experts from referencing at trial and asks the court not to issue such a blanket ruling.  (Doc. 130 at 16). Second, Plaintiff maintains that expert opinions based on inadmissible evidence may be given by qualified experts at trial "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703.  Plaintiff's experts are not required to have some sort of specialized knowledge about Ford itself, which would be virtually impossible to obtain. (*Id*. at 17).

The court agrees with Plaintiff that it cannot decide as to the testimony Defendant seeks to preclude without knowing which documents Defendant references.  A general ruling is premature without such information.  Additionally, Plaintiff's argument about the type of evidence expert witnesses may rely upon is

well-taken, but the court stresses that the facts or data relied upon must be the type reasonably relied upon by experts in the field.  To the extent that Defendant seeks a general ruling, it is **DENIED**.  This order, however, does not prevent Defendant from making specific objections as they arise during trial.

## III.

### PLAINTIFF'S MOTION IN LIMINE (Doc. 128)

#### A.  Ford's Safety Record and/or Good Moral Character (#1)

Plaintiff seeks to exclude "evidence or comments that Ford Motor Company (or non-party TRW) is one of the world's leading companies when it comes to vehicle safety research, that Ford (or non-party TRW) 'pioneered' numerous safety improvements since the 1940's, or that Ford (or non-party TRW) spend millions of dollars per year on safety research and/or testing."  (Doc. 128 at 2).  Plaintiff contends that Defendant's prior general "good acts" are irrelevant to the seatbelt buckle at issue and unfairly prejudicial.  (*Id*. at 3).   Ford argues in response that evidence regarding its efforts to ensure vehicle safety is material and relevant to the allegations here.  (Doe. 131 at 3-8).  The court disagrees.

The only claim before the court is a breach of the implied warranty of merchantability of the seatbelt.  That is, whether the instant seatbelt was "fit for the ordinary purposes for which [seatbelts] are used."  *Easterling*, 780 F. App'x at 836 (quoting Ala. Code § 7-2-314).  The complaint does not assert that Ford sold a

dangerous and non-merchantable vehicle, as argued by Defendant.  (*See* Doc. 131 at 4).  Instead, it is the seatbelt that is at issue.  The overall safety considerations of Ford with regard to the vehicle in general are not at issue.  As such, the motion is **GRANTED** as to this issue generally.  However, to the extent that Defendant seeks to introduce evidence related to the safety record and development of the RNS4G seatbelt, the court will allow such evidence.

### B.  Overall Safety Record of Vehicle (#5)

Plaintiff seeks to exclude statements that the subject vehicle is "safe" and argues that the safety of the vehicle overall is not at issue, but instead whether the RNS4G seatbelt was fit for its intended purpose.  (Doc. 128 at 9).  Ford asserts that it should be able to address the overall safety considerations and the like regarding the subject vehicle.  (Doc. 131 at 8-9).  This issue is essentially the same as the one addressed above and the motion is **GRANTED** for the same reasons, with the same caveat as it relates to the instant seatbelt.

### C.  Federal Motor Vehicle Safety Standards (#7)

Plaintiff seeks to exclude evidence that the subject vehicle met or exceeded all applicable Federal Motor Vehicle Safety Standards ("FMVSS").  (Doc. 128 at 14-15).  Plaintiff contends that the probative value of this evidence is low and outweighed by the possibility of misleading the jury because of the self-certification process.  (*Id*.).  Defendant  responds that under Alabama law, compliance with

federal regulations, such as the FMVSS, and industry practices is some evidence of due care, and under Ala. Code § 7-2-314, evidence that a seller exercised care is relevant to the issue of whether the warranty was in fact broken. (Doc. 131 at 9). As such, Defendant contends that evidence that the subject vehicle, including the occupant restraint system complied with all applicable FMVSS is relevant and admissible. (*Id*.).

Plaintiff's motion is **DENIED**. The certification relates directly to the safety belt system at issue, and whether Defendant complied with federal standards is relevant to the issue of merchantability. Plaintiff's argument goes more to the weight of the evidence and not to its admissibility.

### D. General Statistics Pertaining to Crashes (#9)

Next, Plaintiff seeks to exclude "evidence of governmental statistics pertaining to the subject vehicle, similar vehicles, the subject buckle and/or similar buckles, for the essential purpose of showing that the subject vehicle and/or the subject buckle are no different or worse than any other vehicle or buckle." (Doc. 128 at 16). Plaintiff contends that general statistics do not and cannot meet the "substantially similar" test discussed above and has a potential prejudicial impact. (*Id*. at 16-17). Defendant contends that statistical evidence is admissible and relevant with regard to Ford's overall safety considerations with regard to the total design of the vehicle and the vehicle's overall performance and potential for danger.

(Doc. 131 at 10-11). Defendant states that "the evidence that will be presented is essentially factual crash evidence of real-world data collected by the federal government in performance of its official duties." (*Id*. at 12). Defendant maintains this is the type of information its engineers used when designing and developing the vehicles, including the seatbelts, in part to meet the reasonable expectations of ordinary consumers in its safety. (*Id*.).

As the court has repeatedly stated in this order, the issue to be tried is not the merchantability of the car in general. Instead, as stated by the Eleventh Circuit, the issue is whether "the seatbelt at issue was not 'fit for the ordinary purpose for which [seatbelts] are used.'" *Easterling*, 780 F. App'x at 836. Statistics regarding the overall safety and/or performance of the vehicle in general are not relevant to that issue. As such, the motion is **GRANTED** as to this issue generally. However, to the extent that Defendant seeks to introduce statistics related to the safety record and development of the RNS4G seatbelt, the court will allow such evidence.

### E. Lack of Problems with Subject Vehicle (#12)

Plaintiff contends that "[t]he fact that others may have driven this kind of vehicle, with this kind of buckle, 'without incident,'" is totally irrelevant to this case," unsupported hearsay, fails the substantial similarity test for the admission of evidence of other incidents and is unfairly prejudicial. (Doc. 128 at 19). Plaintiff further argues that "[w]hether this kind of vehicle (or even this specific vehicle) with

an RNS4G buckle was operated for years without incident is irrelevant to the simple issue of whether this buckle was fit for its ordinary purpose on this day in this crash." (*Id.*).

Defendant contends that Plaintiff's argument is inconsistent with the Eleventh Circuit's opinion in this case. (Doc. 131 at 12-13). Specifically, Defendant points to the statement that Ala. Code § 7-2-314 requires a factfinder "to account not just for uses to which a good has been put, but also for its age and wear and tear." *Easterling*, 780 F. App'x at 837. As such, Defendant maintains that it should be able to introduce evidence that that truck was driven for over 160,000 miles at the time of the crash, the seatbelt was 10-year-old, as well as what a 10-year-old seatbelt should be able to withstand. (*Id.*).

The court agrees with Plaintiff that information about this type of vehicle generally is irrelevant to the issue at hand. The motion is **GRANTED** as it relates to the vehicle generally, but **DENIED** as it related to Plaintiff's vehicle specifically. Information regarding Plaintiff's vehicle is certainly relevant to whether the subject seatbelt was fit for its ordinary purpose.

### F. Tires, Brakes or Other Maintenance-Related Issues Caused Crash (#13)

Plaintiff maintains that there is no evidence that any other issue that may have existed with respect to the subject vehicle had any influence on the alleged flaws in the RNS4G buckle or the cause of the crash, and it would be speculative for any such

suggestion. (Doc. 128 at 20). Defendant generally agrees with Plaintiff, but reserves the right to explain the details of its accident reconstruction as provided in its Rule 26 report and the deposition of Todd Hoover. (Doc. 131 at 2). As such, the motion is **GRANTED**. Defendant may present testimony regarding the details of the accident. Such evidence is background evidence that will explain to the jury the details necessary to complete the story. *See, e.g., United States v. Veltman*, 6 F.3d 1483, 1498 (11th Cir. 1993) (noting in part that the evidence was inextricably intertwined with the other evidence of the criminal offense).

### G. Product Misuse or Speed (#14)

Plaintiff seeks to prevent Defendant from arguing that Plaintiff misused the subject vehicle by exceeding the posted speed limit and that if the Plaintiff had not been speeding, there would have been less energy associated with the crash. (Doc. 128 at 20). Defendant generally agrees with Plaintiff, stating that it does not intend to offer evidence of "complete/whole product" misuse, but reserves the right to explain the details of its accident reconstruction as provided in its Rule 26 report and the deposition of Todd Hoover, and to some extent Don Phillips, including speed. (Doc. 131 at 2). The motion is **GRANTED** with the caveat provided by Defendant. Defendant may present testimony regarding the details of the accident, including the speed at which Plaintiff was allegedly traveling.

### H.  Express Warranty Period (#15)

Plaintiff seeks to exclude evidence pertaining to the alleged express warranty period of the RNS4G buckle.  (Doc. 128 at 23-24).  Plaintiff argues that evidence regarding the express five warranty is not relevant to the claim in this case.  (*Id.*).  Defendant responds that "it should be allowed to present evidence concerning whether any historical warranty claims (or other claims) had been presented to a dealership, or to the complaint, that the subject vehicle's seatbelts were in some way not functioning properly.  (Doc. 131 at 13).

Defendant's response to this issue is not exactly on point.  In any event, the court agrees with Plaintiff that testimony concerning the five-year express warranty period for the RNS4G buckle is irrelevant to the issue to be tried.  As such, the motion as it related to the express warranty period is **GRANTED**.  The court has already addressed the issue of warranty claims.

## IV.

## CONCLUSION

For the foregoing reasons, the motions in limine (docs. 127 and 128) are each **GRANTED IN PART** and **DENIED IN PART** as detailed above.

**DATED** this 7th day of February, 2020.

_John E. Ott_

_____
**JOHN E. OTT**
Chief United States Magistrate Judge